**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
JANE DOE,                                            :
                                                     :    Civil Action No.: 8:23-cv-00426 (BKS) (DJS)
                        Plaintiff,                   :
                                                     :
            v.                                       :
                                                     :
ST. LAWRENCE UNIVERSITY, and                         :
ERNESTO MORALEZ, in his individual                   :
and professional capacity,                           :
                                                     :
                        Defendants.                  :
-------------------------------------------------------- X


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER APPEAL OF THE
MAGISTRATE JUDGE'S ORDER DENYING PLAINTIFF'S MOTION TO PROCEED
<u>ANONYMOUSLY</u>**


**WIGDOR LLP**

Jeanne M. Christensen
Brooke Payton (admission pending)

85 Fifth Avenue
New York, NY  10003
Telephone:  (212) 257-6800
Facsimile:  (212) 257-6845
jchristensen@wigdorlaw.com
bpayton@wigdorlaw.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

PROCEDURAL HISTORY....................................................................................................2

LEGAL ARGUMENT.............................................................................................................3

I.      Applicable Law: *Sealed Plaintiff v. Sealed Defendant* ........................................3

II.     The Decision's Misapplication of *Sealed Plaintiff v. Sealed Defendant* .............................4

        A.      The Decision Applied the Wrong Legal Standard and Failed to Consider the
                Specific Facts Alleged in the Complaint ..................................................6

III.    The Decision Relied on Flawed Non-Binding Caselaw and also Incorrectly Included
        Non-Relevant Factors that Prejudiced Plaintiff ....................................................11

        A.      St. Lawrence's Title IX Proceeding was confidential and not available to the
                public..........................................................................................13

IV.     The Decision Incorrectly Holds That it Was Required to Consider Plaintiff's Age .........15

V.      Granting the Motion Would Not Place Defendants "at a severe disadvantage"................17

VI.     The Court Can Reverse the Decision and Grant the Motion ...............................23

CONCLUSION......................................................................................................24

## TABLE OF AUTHORITIES

Cases                                                                                          Page(s)

Anonymous v. Simon,
   2014 WL 819122 (S.D.N.Y. 2014) ........................................................ 20
Coker v. Georgia,
   433 U.S. 584 (1977)........................................................................... 1
Doe #1 v. Syracuse Univ.,
   2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020) .................................. 5, 22
Doe #1 v. Syracuse Univ.,
   2018 WL 7079489 (N.D.N.Y. Sept 10, 2018) .................................. 5
Doe No. 2 v. Kolko,
   242 F.R.D. 193 (E.D.N.Y. 2006)........................................... 1, 18, 23
Doe on behalf of Doe No. 1 v. Nygard,
   2020 WL 4890427 (S.D.N.Y. Aug. 20, 2020) .................................. 5
Doe v. Black,
   2023 WL 5334642 (S.D.N.Y. Aug. 18, 2023) .................................. 5
Doe v. Deschamps,
   64 F.R.D. 652 (D. Mont. 1974) ....................................................... 3
Doe v. Nat'l Conference of Bar Examiners,
   2017 WL 74715 (E.D.N.Y. Jan. 6, 2017) .................................11, 12, 13
Doe v. Kachalia,
   2023 WL 845446 (S.D.N.Y. Dec. 6, 2023) ..................................... 5
Doe v. Skyline Auto. Inc.,
   375 F. Supp. 3d 401 (S.D.N.Y. 2019) .................................... 12, 13, 14
Doe v. Smith,
   2019 WL 6337305 (N.D.N.Y. Nov. 27, 2019) ................................ 6
Doe v. Stegall,
   653 F.2d 180 (5th Cir. 1981)........................................................... 3
Doe v. United Services Life Ins. Co.,
   123 F.R.D. 437 (S.D.N.Y. 1988)..................................................... 3
Does 1-4 v. Foukas,
   2021 WL 8892823 (E.D.N.Y. Mar. 20, 2021)................................. 5
Does I thru XXIII v. Advanced Textile Corp.,
   214 F.3d 1058 (9th Cir. 2000)......................................................... 3
EW v. New York Blood Ctr.,
   213 F.R.D. 108 (E.D.N.Y. 2003)..................................................... 6
P.F. v. Brown,
   197 N.Y.S.3d 679 (Sup. Ct. Queen's Cty. 2023)............................. 18
Rapp v. Fowler,
   537 F. Supp. 3d 521 (S.D.N.Y. 2021) ...................................... 16, 17
Sealed Plaintiff v. Sealed Defendant,
   537 F.3d 185 (2d Cir. 2008)................................................ *in passim*
Trooper 1 v. New York State Police,
   2024 WL 1345516 (E.D.N.Y. Mar. 29, 2024)................................. 5

Rules

Local Rule of Practice for the Northern District of New York 72.1 ................................................ 1
Federal Rule of Civil Procedure 10 .................................................................................................. 1

Other Authorities

#worstplaintifffever: Popular Public Shaming and Pseudonymous Plaintiffs,
    84 Tenn. L. Rev. 779 (2017) ..................................................................................................... 15
Privacy Please ... Protecting the Pseudonymous Plaintiff,
    46 Seton Hall Legis. J. 839 (2022) ........................................................................................... 15

On July 9, 2024, Magistrate Judge Stewart entered an order denying Plaintiff's motion to proceed in this action as "Jane Doe." Dkt. No. 63 (the "Decision"). The relief requested in Plaintiff's motion (the "Motion") (Dkt. No. 49) was to proceed using a pseudonym, and the Decision denied the relief in its entirety. Plaintiff submits this memorandum of law in support of Plaintiff's appeal of the Decision in its entirety pursuant to Local Rule of Practice 72.1(b) ("Rule 72.1(b)").[1] For the reasons set forth below, following this Court's de novo review, the Decision should be reversed.

## PRELIMINARY STATEMENT

It is within the Court's discretion to permit Plaintiff to continue in this action as Jane Doe. She has not requested that the docket be sealed from the public nor asked that the public is denied access to filings. Instead, as a victim of anal rape, she has asked that the public docket does not contain her name. This request must be balanced with Federal Rule of Civil Procedure 10(a) which requires that a complaint "include the names of all the parties." Fed. R. Civ. P. 10(a). While the public has a right of access to judicial proceedings, federal courts allow a party to proceed under a pseudonym when special circumstances warrant anonymity. "Sexual assault victims are a paradigmatic example of those entitled to a grant of anonymity." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006). The Supreme Court has held that "short of homicide, [rape] is the ultimate violation of self." *Coker v. Georgia*, 433 U.S. 584, 597 (1977). Sexual assault victims should not be violated again by being forced to relive their trauma through the publication of their identities in civil actions. This is the relief requested in the Motion and relief granted by countless

---

[1] Alternatively, Plaintiff respectfully requests that the Court consider allowing her to refile the Motion to ensure that Ms. Doe's declaration attached hereto clarifying facts about her communications, as well as providing additional information regarding her psychological harm, is on the record. If the Court accepts Ms. Doe's declaration herein, which is within the Court's discretion, it will ensure that declarations from two of Plaintiff's treating medical professionals also are on the record.

courts to victims of rape.  Deviating from Second Circuit precedent, the Decision denied Plaintiff's Motion, holding that she failed to provide corroborated claims that disclosure would harm her, sufficient to justify her continued use of a pseudonym.  Decision at 2.  The denial of her ability to proceed using a pseudonym is manifest injustice given the facts in this specific case.  Further, because the Decision was rendered using a misapplication of the relevant Second Circuit legal principles, it is reversible error and Plaintiff's Motion should be granted.

## PROCEDURAL HISTORY

On April 5, 2023, Plaintiff Jane Doe commenced this action by filing a Complaint against Defendants St. Lawrence University ("SLU") and Ernesto Moralez ("Moralez"), under Title IX of the Education Amendments of 1972 ("Title IX"), Title VII of the Civil Rights Act of 1964, and the New York State Human Rights Law, alleging *inter alia* that Ms. Doe was, at the hands of Moralez, a victim of rape and sexual assault. Dkt. No. 1.  On May 22, 2023, Moralez filed his Answer to the Complaint and asserted five counterclaims against Ms. Doe ("counterclaims"). Dkt. No. 12. Following the motion to dismiss the Complaint by Defendant SLU (Dkt. No. 22), and Plaintiff's motion to dismiss the counterclaims (Dkt. No. 32), on March 14, 2024, the Court issued an order ("Order") (Dkt. No. 43) that granted in part and denied in part the respective motions.  Pursuant to the Order, the Court dismissed Counts II and VII of Plaintiff's Complaint and dismissed Moralez's Second, Fourth, and Fifth counterclaims.[2]

---

[2] Plaintiff's remaining counts are: Count I against SLU for discrimination in violation of Title VII; Count III against all Defendants for gender discrimination in violation of the NYSHRL; Count IV against all Defendants for retaliation in violation of the NYSHRL; Count V against Moralez for aiding and abetting in violation of NYSHRL; Count VI against SLU for discrimination in violation of Title IX; Count VIII against SLU for negligence, negligent supervision and negligent retention; Count IX against Moralez for sexual assault; and Count X against Moralez for sexual battery.  Moralez's remaining counterclaims against Plaintiff are for defamation and intentional infliction of emotional distress.

## LEGAL ARGUMENT

**I.**   **Applicable Law: *Sealed Plaintiff v. Sealed Defendant***

In *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008), a case of first impression, the Second Circuit established the guidelines for determining when a party may be allowed to maintain an action under a pseudonym. The Second Circuit held that to determine "whether a plaintiff may be allowed to maintain an action under a pseudonym," courts must balance "the plaintiff's interest in anonymity . . . against both the public interest in disclosure and any prejudice to the defendant." *Id.* In arriving at this result, the Second Circuit reasoned:

> We endorse the Ninth Circuit's formulation and hold that when determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant. This balancing of interests entails the consideration of several factors that have been identified by our sister Circuits and the district courts in this Circuit. **We note with approval the following factors, with the caution that this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration**.

*Id.* at 189-90 (emphasis added).[3] Following the Ninth Circuit, the Second Circuit provided a "non-exhaustive" list of factors that a court *may* consider in determining whether a plaintiff may proceed under a pseudonym:

> (1) Whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the … party [seeking to proceed anonymously] or even more critically, to innocent non-parties, (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by

---

[3]  The Second Circuit relied heavily on the Ninth Circuit decision in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), which in turn relied on cases involving a myriad of factual patterns, specifically: *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (permitting FLSA plaintiffs to use pseudonyms to protect them from employer reprisals); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988) (allowing plaintiff to sue insurance company anonymously to protect against identification as a homosexual), and *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974) (permitting plaintiff in abortion suit to use pseudonym due to the personal nature of pregnancy)).

allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (citations omitted). *Sealed Plaintiff* did not issue a multi-factor test for mechanical application. Rather, it directed a court to engage in a subjective balancing test based upon the unique facts before it. The ten factor examples in *Sealed Plaintiff* are just that – points that a district court "may," but is not required to consider. There can be no question about the Second Circuit's intent when it wrote, "[o]f course, a district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191, n. 4. Thus, a court has the discretion to assign more weight or importance to certain facts in a particular case and is not required to analyze all the factors listed in *Sealed Plaintiff*.

## II.    __The Decision's Misapplication of *Sealed Plaintiff v. Sealed Defendant*__

Using the non-exhaustive list in *Sealed Plaintiff,* the Decision engaged in a mechanical test with cursory application of the facts alleged in this particular case. Contrary to *Sealed Plaintiff*, the Decision reads, "courts **must consider** the following factors on balance" and goes on to list the ten considerations. Decision at 3-4 (emphasis added)[4]. In addition, it did not adhere to the Second Circuit's instructions that "[w]e … caution that this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration." *Sealed Plaintiff*, 537 F.3d at 190. Instead, the Decision glosses over the well-documented harm

---

[4] Despite citing to *Sealed Plaintiff's* directive that courts are not required to list each factor as long as it is clear the "court balanced the interests at stake," the Decision does exactly that. Further, discussed *infra,* the Decision assigned weight to a factor with no relevance to this action.

rape victims face from public scrutiny and simultaneously minimized what happened to Plaintiff by treating her rape allegations with the same level of scrutiny as her sexual harassment claims. Decision at 4 (describing the claims as "sexual misconduct" and that Plaintiff alleges Moralez "sexually harassed her").

Further, it incorrectly held that Ms. Doe <u>must produce</u> medical documentation in support of her declaration that she will experience debilitating harm if forced to publicly disclose her identity, a requirement nowhere to be found in *Sealed Plaintiff,* a case involving sexual assault allegations. Decision at 5-6. Countless courts, including in this circuit, have allowed a plaintiff to proceed under a pseudonym without attaching medical documentation where revealing the plaintiff's name subjects him or her to the risk of public disapproval, shame, harassment, or bodily harm. *See*, *e.g.*, *Trooper 1 v. New York State Police,* No. 22 Civ. 893 (LDH) (TAM), 2024 WL 1345516 (E.D.N.Y. Mar. 29, 2024) (sexual assault); *Doe v. Black*, No. 23 Civ. 6418 (JGLC), 2023 WL 5334642 (S.D.N.Y. Aug. 18, 2023) (rape allegations); *Doe v. Kachalia*, No. 23 Civ. 10395 (DEH), 2023 WL 845446 (S.D.N.Y. Dec. 6, 2023) (permitting plaintiff to proceed anonymously because of the potential harm from his sexual assault and resulting medical and psychological treatment records becoming public); *Does 1-4 v. Foukas*, No. 20 Civ. 5516 (DG) (SJB), 2021 WL 8892823, at *2 (E.D.N.Y. Mar. 20, 2021) (finding that sex trafficking victims' risks to their physical and psychological well-being were "more than speculative" without medical testimony); *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427, at *1 (S.D.N.Y. Aug. 20, 2020) (granting sexual assault survivors' motion to proceed anonymously in a suit against a "world-renowned fashion designer" without medical testimony affirming that they would suffer harm from identification); *Doe #1 v. Syracuse Univ.*, No. 18 Civ. 496 (DEP) (JS), 2018 WL 7079489, at *10 (N.D.N.Y. Sept 10, 2018), *report and recommendation adopted*, No. 18 Civ. 496

(BKS) (SML), 2020 WL 2028285 (N.D.N.Y. Apr. 28, 2020) (holding that plaintiff would proceed anonymously because of the "plainly . . . serious stigma" associated with allegations that plaintiff's actions were discriminatory); *Doe v. Smith*, No. 19 Civ. 1121 (GLS) (DJS) 2019 WL 6337305, at *3 (N.D.N.Y. Nov. 27, 2019) (holding that the sensitive nature of the sexual assault lawsuit outweighed the public's interest in knowing plaintiff's identity); *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003) (holding that plaintiff who "made no particularized showing of any specific harm or stigma . . . caused by prosecuting the case under her own name" was entitled to proceed pseudonymously because the case involved issues of "great intimacy" related to plaintiff's sexual conduct).

The Decision failed to attribute substantial weight to the critical factor in this action, specifically, that rape (especially anal rape) is "a matter of sensitive and highly personal nature."[5] Instead, the Decision repeatedly referenced its view that Defendant Moralez has "suffered grave reputational harm." Decision at 11. For these reasons, and those discussed in detail below, the Decision must be reversed and Ms. Doe's motion to proceed as Jane Doe be granted.

A.    **The Decision Applied the Wrong Legal Standard and Failed to Consider the Specific Facts Alleged in the Complaint**

It is reversible error to hold that "the Court cannot rely on generalized, uncorroborated claims that disclosure would harm Plaintiff to justify her anonymity." Decision at 2. The Second

---

[5]    There is a large amount of publicly available data about the reluctance of rape victims in particular to report. Among violent crimes, sexual assault is one of the most underreported, with federal government reports showing that only 310 of 1000 sexual assaults are reported to the police. *The Criminal Justice System: Statistics*, Rape, Abuse & Incent Nat'l Network, https://rainn.org/statistics/criminal-justice-system (last accessed July 22, 2024) (citing reports issued by the Department of Justice and the Federal Bureau of Investigation). Such data proves the continued stigma in our society associated with being a rape victim. There is no justification for continuing to impede victims further in connection with civil claims. The public has a strong interest in holding perpetrators and third party institutions that help facilitate sexual crimes accountable. Civil financial penalties encourage companies to take the steps needed to protect persons from sexual crimes. The public wants victims to pursue justice because that is critical to addressing public safety, especially given that less than 1% of reported rapes result in criminal prosecution. The holding in the Decision impedes this public interest.

Circuit has never held that a party, including a rape victim, must submit corroboration.  Not only is this purported holding absent from *Sealed Plaintiff*, but court decisions in this circuit both before *Sealed Plaintiff* in 2008 and after, have ruled that parties can proceed with a pseudonym without supporting affidavits.  *See supra* at page 4.  In the Motion, Plaintiff included a declaration that because of the stigma and shame attached to rape that her harm would be substantial if she had to use her full name on the public docket.  Attached to the declaration to this motion, she elaborates on the degree of her psychological trauma, and describes how she has been unable to work a single day for the more than two years following the rape.  Doe Decl. ¶¶ 39-49, 60-61.  She further attaches opinions from two of her treating medical providers about the degree of harm she has experienced, continues to experience and what is likely to happen should she be forced to litigate without using a pseudonym. *Id*. Exs. C and D.

The Complaint details that after she was unknowingly slipped a drug in her drink and rendered incapacitated, she was in and out of consciousness for several hours.  During this state she was incapable of giving consent.  She was then subjected to heinous sexual violence against her will – including being forced to perform oral sex and forceful anal penetration against her will. As set forth in the Complaint:

- Ms. Doe saw the clock and noticed that it was getting late, and she said, "It is getting late, I should go."  Moralez objected and said, "But you haven't tried my mixed drink."

- Ms. Doe was tired and felt pressured but wanted to be respectful to Moralez who acted offended that he could not show off his bartending skills.  She relented and said that she would try one of his drinks …. and still sitting at the kitchen island, drank some of it.

- This drink, … made her feel very different.  In what seemed a very short time to Ms. Doe, she suddenly felt a wave of dizziness and unsteadiness wash over her as she sat there …. she recalls looking at the clock and the time appearing blurred.

- Ms. Doe began to feel unwell and instinctively went over to the water cooler. She lacked the coordination to locate the water dispensing button on the cooler.

- Moralez,… leaned over and kissed Ms. Doe. He then stood back and crossed his arms across his chest and stared at Ms. Doe.

- Ms. Doe was confused and upset and attempted to walk towards his back door where her car was located. Moralez blocked Ms. Doe's exit route and stepped in between her and the door, proceeding to kiss Ms. Doe again. She remembers using both her hands to try to push him away so she could get to the door.

- Over the next few hours, Ms. Doe came in and out of consciousness.

- She experienced intermittent flashes of memory (both "flashbulb memories" and "fragmented memories") that are consistent with rape trauma, as well as a number of substances commonly referred to as date rape drugs.

- There are distinct traumatic moments that Ms. Doe recalls vividly. Ms. Doe particularly recalls laying on her back and feeling her body jerk because Moralez was pulling her pants off. Ms. Doe was in pain because Moralez did not unbutton her pants. The pants remained buttoned up as Moralez yanked them off Ms. Doe.

- Ms. Doe's next memory involves hearing bottles of lubricant clicking and then feeling Moralez put multiple fingers with lubricant inside of her vagina. Ms. Doe's recalls an intense pain that caused her to flinch.

- Moralez removed his fingers and proceeded to put his hand on Ms. Doe's head, pushing her face down his body and forcing her to give him oral sex.

- Ms. Doe was overcome with terror. She was scared and desperate to get out of there safely. She felt as if she could not move her body of her own volition. She was willing herself to move but could not make it happen – again, physical experiences consistent with the most common rape date drugs, most of which can be purchased online and some concocted using over-the-counter substances.

- Moralez then pulled Ms. Doe back up to the top of the bed and mentioned something involving a woman or man's bottom, indicating that he had never engaged in anal sex before. Moralez then flipped Ms. Doe over and penetrated her anally. **Ms. Doe begged Moralez to stop**.

- Ms. Doe was unable to physically fight back.

- Moralez proceeded to flip Ms. Doe frontwards, and then penetrated her vaginally. Moralez ejaculated inside of her, unprotected.

- When Ms. Doe eventually came back into consciousness, she quickly gathered her clothes and got dressed so she could escape. Ms. Doe was so frightened that she rushed out of his room before she could even find her tank top.

- She was terrified of Moralez. …. Ms. Doe did not know what Moralez was capable of and feared that he would try to hurt or even kill her.

- At approximately 2 a.m., or later, when she arrived back at the B&B …she vomited violently at least twice and experienced diarrhea the rest of the night. She slept no more than a few hours and still felt sick the next day.

Dkt. No. 1, ¶¶ 163 to 185.

The psychological trauma to Ms. Doe and her substantial emotional distress as a result of these acts should not be minimized but that is exactly what the Decision did. *See* Doe Decl. ¶¶ 39-49. Despite countless courts holding that acts of rape are sufficient to allow a party to proceed anonymously, and no Second Circuit decision holding that she needed to "corroborate" her own experiences, the Decision ruled that her anticipated harm is nothing more than "mere speculation." Decision at 5. It is confounding that a court concludes that her harm is "mere speculation" despite the fact that New York's Civil Rights Law, Section 50-b was enacted precisely to protect rape victims from the harm inherent in public scrutiny. Moreover, it is easy to imagine plaintiffs who may not have access to medical professionals, such as those proceeding *pro se*, and it is a fundamental error to rule that a plaintiff <u>must</u> procure formal letters from health care providers to submit to a court to avoid being publicly shamed.

To rule that claims alleging anal rape and forced oral sex when a victim is incapacitated and unable to consent are not "highly intimate and private details" that would not engender "public ostracism by the community" is wrong. Ms. Doe's allegations involve highly intimate, non-

consensual sexual activity, and would engender public ostracism, victim-blaming and "slut-shaming" on account of any role the public would assume Ms. Doe played in these assaults, as Defendant Moralez has accused her of. The Decision never once references Moralez's counterclaims against Ms. Doe. Dkt. No. 12. Among the harmful and false allegations contained in the counterclaims about Ms. Doe's conduct that would invite fault-finding and victim blaming for any part Ms. Doe allegedly played in these assaults, are the following:

- Ms. Doe commenced the action to "defame, humiliate, harass, and punish Moralez" and Doe engaged in a consensual sexual encounter. (¶ 2)
- Doe and two other SLU professors conspired together to conduct a campaign of defamation and harassment to ruin Moralez's personal and professional reputation in retaliation for perceived slights Moralez. (¶ 3)
- Jane Doe used the criminal justice system and SLU's Title IX office to have Moralez fired or arrested for fear of the repercussions that would have resulted from Doe's, a married woman, consensual sexual encounter with Moralez. (¶ 4)
- Doe even collaborated with a disturbed individual who had been harassing Moralez online for years to defame and torment Moralez. (¶ 4)
- Doe said she had marital problems and was in a loveless marriage and that her husband was an addict. (¶ 12)
- Doe engaged in character assassination of Moralez, meant to destroy his reputation on SLU's campus and beyond. (¶ 38)
- Doe and other professors maliciously conspired together to help share a fabricated story that Moralez sexually harassed students at a high school he worked at in 2005 in New Mexico. (¶ 55).

As set forth in her declaration, Plaintiff's PTSD continues and is easily triggered by discussion of the rape. Doe Decl. ¶ 39. Removing her status as Jane Doe will subject her to additional public scrutiny based on the defamatory allegations made by Defendant Moralez in his counterclaims as set forth above. Clearly, he wants the Motion to be denied because his vindictiveness is immense, and his counterclaims will become more harmful.

Plaintiff, a wife and mother to two children, has lost her stability in these roles, and has been unable to return to work as a college professor because of what happened on April 12, 2022.

Doe Decl. ¶¶ 41-46, 48, 60-61. Forcing her to choose between holding wrongdoers accountable in a civil action, including Defendant SLU, or experiencing greater substantial mental and emotional harm, is no choice at all and the Decision should be reversed.

**III.    The Decision Relied on Flawed Non-Binding Caselaw and also Incorrectly Included <u>Non-Relevant Factors that Prejudiced Plaintiff</u>**

The Decision did not apply the correct legal standard to determine whether Plaintiff's Motion should be granted because it assigned weight to the question "whether identification poses a risk of retaliatory physical or mental harm to the . . . party."  Decision at 5-7.  There are no allegations in the Complaint or the Motion in which Plaintiff seeks anonymity because of fear of retaliation.  It is not a factor and should not have been weighed against her, but it was. *Id*.  The Decision compounded this error by improperly categorizing this non-relevant factor in with its analysis of "plaintiff's confidentiality thus far in the litigation."  *Id*.

The analysis of this point is fundamentally incorrect for several reasons.  First, the Decision wrongly concludes that "the status of a plaintiff's confidentiality thus far in the litigation," does not support Jane Doe status.  *Id.*  at 6-7.  Such a conclusion is confounding because Plaintiff's identity has not been disclosed in this action.  Christensen Decl. ¶6.  On this record, Plaintiff's identity has been kept confidential at all times.  After the motions to dismiss were decided, the parties drafted and submitted a confidentiality order that was entered which preserves the privacy of Plaintiff's identity.  Dkt. No. 58.  The confidentiality order was not entered to destroy her Jane Doe status.

Second, the Decision mistakenly applies to this record the decision in *Doe v. Nat'l Conference of Bar Examiners*, 2017 WL 74715 (E.D.N.Y. 2017).  That case "concerns Defendants' alleged refusal to process Plaintiff's character and fitness application, … because of an improperly executed signature page." *Id.* at *1.  Such facts do not come close to a situation in which a plaintiff

requests Doe status because of rape.  Critically, in *Doe v. Nat'l Conference of Bar Examiners* the court held that in numerous publicly filed state and federal court actions relating to the same matter, the plaintiff had used her full name.  *Id.* at *3.  ("Plaintiff publicly identified herself in a myriad of State and federal court documents relating to this matter, which have not been filed under seal and are currently accessible to the public.").  In contrast, no state or federal court actions exist involving Ms. Doe that have any connection to this action.  Christensen Decl. ¶ 12.  Further, the plaintiff in *Doe v. Nat'l Conference of Bar Examiners* used her full name in the signature block when she filed her amended complaint.  *Id.*  Such facts render this case inapplicable as precedent, and it was error to deny the Motion relying upon it.

Third, it was error for the Decision to rely upon *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d 401 (S.D.N.Y. 2019), a case that is fundamentally flawed in numerous respects.  The primary case relied upon by the court in *Skyline Auto, Inc.* was *Doe v. Nat'l Conference of Bar Examiners*.  Misapplying that case, the court in *Doe v. Skyline Auto. Inc.* held that once defendants "knew the identity of plaintiffs in this litigation," the weight shifted against allowing the use of a pseudonym for the Doe plaintiffs.  But *Doe v. Nat'l Conference of Bar Examiners* does not hold that the other party's knowledge of the true identity of the anonymous party works in favor of denying a motion to use a pseudonym.  The issue is whether the **public** already knew her identity.  For obvious reasons, if a plaintiff has publicly filed other legal actions regarding the same subject matter, the reasons supporting a motion to use a pseudonym can be moot.  The court in *Doe v. Nat'l Conference of Bar Examiners* had proof in the form of publicly filed state and federal court actions that the plaintiff's identity had been revealed in connection with the action before it.  That was not the situation in *Skyline Auto, Inc.*  Instead, the court used an underlying confidential EEOC filing

to hold that the parties knew <u>one another's</u> identity, and then reasoned this was a factor against granting anonymity.  375 F.Supp.3d at 407.

The reasoning in *Skyline Auto, Inc.* is faulty and fails to address the issue of whether the public had prior knowledge of the plaintiffs' identities in connection with their allegations.  Of course the parties must exchange identifying information with one another, that is the only way discovery can proceed. See *Doe v. Oei, et al.*, Index No. 950758/2020 (Kaplan, D.), 2021 N.Y. Slip Op. 32223 (Sup.Ct, N.Y. Nov. 3, 2021) ("the balance weighs in favor of plaintiff because defendant will be permitted to know the name of the plaintiff and conduct discovery; by revealing plaintiff's name to defendant, any claimed prejudice is eliminated.").  Worse, the court in *Skyline Auto, Inc*. failed to mention that EEOC proceedings are confidential and <u>not publicly available.</u>  This is precisely why parties regularly submit charges to the EEOC using their full names.[6]  Not a single sentence in *Sealed Plaintiff* stands for the proposition that disclosure of a party's name in a separate proceeding warrants denial of a motion to proceed with a pseudonym.

## A.    St. Lawrence's Title IX Proceeding was confidential and not available to the public

The Decision repeatedly relies upon the faulty *Skyline Auto, Inc.* decision and the inapplicable *Doe v. Nat'l Conference of Bar Examiners*, to arrive at the conclusion that "because of the disclosure of Plaintiff's identity to Defendants through *various administrative proceedings*, …. the seventh factor weighs against allowing Plaintiff to proceed anonymously."  Decision at 7. There are no "various" administrative proceedings except the confidential Title IX investigation performed by Defendant St. Lawrence University.  This was a confidential process and members

---

[6] If this court sanctions the Decision's reliance on such a holding, clearly in error, the process of submitting charges to the EEOC must be updated.  Presently all persons submitting charges are told the process is strictly confidential which is why pseudonyms are not used.  If using one's identity in the EEOC will subject an individual to a later denial of a motion to proceed anonymously in court, guidance by the EEOC must be given to the public.

of the public do not have access to the documents and information. In fact, citing to "confidentiality," Defendant SLU initially refused to allow Plaintiff to have counsel present when she was subjected to questioning, and refused to share information gathered in the investigation. Christensen Decl. ¶ 13; Doe Decl. ¶¶ 31, 56. As part of the investigation Defendant St. Lawrence University required Plaintiff and her counsel to sign and agree to highly restrictive use agreements to view documents. *Id.*

Like the EEOC charging party in *Skyline Auto, Inc.,* if a party in a prior Title IX investigation knew that seeking an investigation of a claim of rape through a school's process would be used to deny use of a pseudonym in a subsequent court action, it is likely far fewer Title IX investigations would be commenced. Had Plaintiff been informed of this inevitability, she would not have asked the school to investigate. Doe Decl. ¶ 57. The record in the Title IX investigation has been kept confidential and through the use of the Protective Order entered here, it will remain in this state. The Decision fails to articulate how the cloak of confidentiality maintained in the Title IX investigation presents "less risk of harm" to Ms. Doe should she be required to divulge her full name now. In conclusory fashion, the Decision reads, "This factor correlates with factors two and three because '[i]f a plaintiff's confidentiality has not been maintained throughout the proceedings, there is less of a risk of harm should the plaintiff not be permitted to proceed under a pseudonym.'" Decision at 6-7, quoting *Doe v. Skyline Auto. Inc.*, 375 F. Supp. 3d at 407. It is an erroneous finding that the public knows Plaintiff's identity as a result of SLU's Title IX investigation. The weight afforded to *Sealed Plaintiff*'s factors 2 (not relevant), 3, and 7 to deny the Motion was reversible error.

## IV.    <u>The Decision Incorrectly Holds That it Was Required to Consider Plaintiff's Age</u>

The Decision erroneously holds that it is required to conduct an analysis using Ms. Doe's age, and states, "The fourth factor **requires courts to determine** 'whether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . particularly in light of [her] age.'" Decision at 8 (emphasis added).  The Second Circuit has not mandated that a court is "required" to use a single one of the ten factors it listed in *Sealed Plaintiff*.  It is unreasonable to hold that because Plaintiff was 37 years old when she was raped that this fact *weighs against* her Motion. If this Court ratified such reasoning, the disastrous results are obvious.  Nowhere in *Sealed Plaintiff* does the court suggest that as part of the pseudonym analysis that *less weight* be afforded if a party was an adult when raped.  The Second Circuit was attempting to provide a "non-exhaustive" list of factors to consider.  No legal principle exists from the opinion to conclude that only minor sexual assault victims deserve the ability to proceed as a "Doe."  It was error to arrive at such a conclusion on this basis.

Ms. Doe is particularly vulnerable to harm if she is forced to reveal her identity and litigate without a pseudonym.  As set forth in her declaration, the harm, shame and trauma from what happened to her is so severe she has not been able to work a single day as a professor since April 12, 2022.  Doe Decl. ¶¶ 39-49, 60-61.  Not only does the thought of standing up in front of a classroom trigger her PTSD to such a degree that she suffers immediate severe anxiety and panic, with mental, emotional and physical symptoms, but the proposition that she would look out at a classroom of students knowing that publicly available information on the internet shows that she was the victim of anal rape – is so severe that at this juncture, Plaintiff cannot imagine being able

to teach again.  Doe Decl. ¶¶ 41-46. Such representations are far from claims that a party would suffer mere generalized embarrassment if his or her name was made public.[7]

The reasoning set forth under the heading "Vulnerabilities" is wrong and should not be adopted by this Court.  The case of *Rapp v. Fowler*, 537 F. Supp. 3d 521 (S.D.N.Y. 2021) cited in the Decision on this point, is inapposite here.  First, the court in *Rapp* noted that the plaintiff's "prior actions undercut his position [for a pseudonym] on the rather unusual facts of this case." *Id.* at 528.  It arrived at this conclusion based on evidence of the plaintiff's repeated disclosure of his identity to others over the course of 35 years in connection with his rape allegations against Kevin Spacey.  Second, the court considered it significant that he had agreed to be interviewed using his true identity to *Vulture*, a pop culture site that is part of New York Magazine online.  Millions of viewers read the content that the plaintiff in *Rapp* agreed to be interviewed for.  The estimated traffic to the *Vulture* site is 18 million visitors monthly.[8]  Third, the purpose of the interview was to publicly name Spacey as the perpetrator.  *Rapp,* 537 F. Supp. 3d at 529.  Thus, the plaintiff willingly interjected his story using his full name to millions of online users for the purpose of drawing attention to it – a fact that simply does not exist for Ms. Doe.  Doe Decl. ¶ 32.  Given the 35 years during which the plaintiff had spoken to other people about his sexual assault claims and the voluntary interview with *Vulture*, the court wrote, "the evidence suggests that C.D. knowingly and repeatedly took the risk that any of these individuals at one point or another would reveal his

---

[7]  See also Keara Walsh, <u>Privacy Please ... Protecting the Pseudonymous Plaintiff</u>, 46 Seton Hall Legis. J. 839 (2022) (current balancing tests do not adequately account for privacy challenges created by the internet and factors that consider public access to judicial proceedings should be reevaluated given the repercussions of electronic access to court records, especially for survivors) (copy provided attached to Christensen Decl., Ex. B); Jayne S. Ressler, <u>#worstplaintiffever: Popular Public Shaming and Pseudonymous Plaintiffs</u>, 84 Tenn. L. Rev. 779, 788 (2017) (the use of social media and the internet as a tool for public shaming deters victims from seeking redress from the courts, argues that current standards are ineffective) (copy provided attached to Christensen Decl., Ex. C).
[8]  *See* https://www.semrush.com/website/vulture.com/overview/#competitors-title.

true identity in a manner that would bring that identity to wide public attention, particularly given Spacey's celebrity." *Id.* at 530.

Under any objective view of the underlying facts in this action, no comparison to the facts in *Rapp* are possible. Ms. Doe was raped on April 12, 2022, not 30-plus years ago. The individual defendant is not a celebrity. Plaintiff has never spoken to a single media outlet about her allegations in this action. Doe Decl. ¶ 32. A private post to a limited number of people she knew (Exs. A and B to Moralez's declaration reference 20 people and 14 people respectively) cannot be considered the same as the interview in *Rapp* available and disseminated to **18 million users** on a monthly basis– and a publication that remains available on the internet. Indeed, the two private posts attached to Moralez's declaration critically do not contain his name or any other identifying information and were not public.[9] Moreover, Ms. Doe removed these posts shortly thereafter and then permanently deleted her Facebook account. Doe Decl. ¶¶ 20, 29. She did this months prior to commencing this action in April 2023. The Decision relies specifically on *Rapp* to conclude that Plaintiff's "prior actions undercut her position" to seek anonymity in this case. Decision at 7. This is a reversible error.

## V.    Granting the Motion Would Not Place Defendants "at a severe disadvantage"

At page 11 of the Decision, is the following: "allowing Plaintiff to proceed anonymously would put Defendants at a severe disadvantage at all stages of litigation." First, Defendant SLU did not oppose the Motion. Second, while the Decision first used the fact that a Title IX investigation took place as a basis upon which to deny the Motion, it then disregarded the fact that

---

[9] The icon next to the timestamp on the two Facebook posts is an icon of two figures. The two figures icon is the method by which Facebook informs users that a post is set to the "Friends" only privacy setting. If Plaintiff's post was publicly available and set to the "Everyone" setting (which it was not), it would display an icon of a globe. *See* https://www.facebook.com/help/1297502253597210/?helpref=hc_fnav under the heading "control who can see posts on your Facebook timeline." This is true based on the face of the exhibits submitted by Defendant Moralez to the Court, but he avoided pointing this out.

the investigation, which took place over more than 12 months, involved extensive fact-finding, and the interviewing of more than 8 witnesses in addition to Ms. Doe and Moralez. The investigators claimed that some witnesses provided documents, and they reviewed hundreds of pages of interview notes, emails, text messages and other documents, which are available to the Defendants herein and to Ms. Doe. Christensen Decl. ¶ 14. There is no dispute that both Plaintiff and Defendant Moralez were subjected to several rounds of questioning by investigators who obtained the names of all potential witnesses to the events. It is difficult to understand how the Decision concluded that Plaintiff's status as Ms. Doe will impede the ability to locate and speak to potential witnesses. Of course, it does not.

Callously, the Decision reduces her allegations about being anally raped and forced to perform oral sex against her will as a mere dispute over "social norms." Decision at 10. Respectfully, it speaks volumes that this is how the disputes in this case are being categorized, and the dismissiveness of the specific facts to a single sentence as part of this analysis illustrates this point. *Id.* ("Plaintiff alleges that she was sexually assaulted and sexually harassed. *See generally* Dkt. No. 1."). The public is not better served or protected by knowing Plaintiff's true identity, particularly given the sensitive and personal nature of her allegations and the likelihood of further psychological injury. In fact, it is a greater public concern that sexual assault victims are encouraged to report such crimes. *See P.F. v. Brown*, 197 N.Y.S.3d 893, 896 (Sup. Ct. Queen's Cty, 2023) (case involving victim of revenge porn, "generally, there is a strong public interest in protecting the identities of alleged sexual abuse/assault victims, so that other victims will not be deterred from reporting similar crimes."). Moreover, Ms. Doe is not asking the Court to seal this proceeding from the public. The docket is fully available to the public. It is difficult to understand how the public's ability to monitor fairness in our legal system and ensure that actions are

conducted efficiently and fairly is served by removing "Jane Doe" in the caption and inserting Plaintiff's full name. Using Jane Doe did not impede Defendants as part of the previously filed motions to dismiss. Yet this is what the Decision concludes.

Incredibly, the Decision also denied the Motion because "the individual Defendant has the right to publicly confront an accuser." Decision at 9. This is a civil matter that is in the initial stages of discovery. A trial date could be two years in the future. The right to proceed as a Jane Doe can be challenged at any time in the litigation, including immediately prior to trial. *See Doe No. 2*, 242 F.R.D. at 198 ("the restrictions contained in this order only apply to the discovery period and may be reconsidered if this case goes to trial."). It is wrong to deny the Motion at this juncture, on the basis that anonymity will deny Defendant Moralez's "right to confront an accuser," when the litigants are nowhere near trial. Defendant can renew his objection before the action is in front of a jury. Given the severe harm to Plaintiff by forcing her to publicly out herself as a rape victim, the use of such reasoning at this stage is improper.

This same improper line of reasoning was used in the Decision in connection to the assessment of prejudice to Defendant Moralez. To the clear detriment of Plaintiff, a rape victim, the Court decided her name should be accessible to the public now – well before a jury trial, because it is unfair "when a defendant is required to defend itself publicly before a jury while plaintiff . . . make[s] her accusations from behind a cloak of anonymity." Decision at 10. At the initial stage of discovery, Defendant Moralez is not faced with defending himself "publicly before a jury." The Decision that so clearly results in severe harm to Plaintiff, places undue weight on how Defendant Moralez would be prejudiced in the event the action reaches a jury many months in the future.

The Decision also incorrectly relies on the decision in *Anonymous v. Simon*, 2014 WL 819122 (S.D.N.Y. 2014)[10] to deny the Motion.  Decision at 10-11.  In *Anonymous v. Simon* the plaintiff had "given an interview to the New York Post about her claims, in which she names Defendant but keeps her own identity anonymous."  *Id*. at *2.  In 2014, the average weekday circulation of the New York Post was approximately 300,000 people.[11]

It is improper to repeatedly compare a rape victim who shared that she was a rape victim with people she knew but did not disclose the identity of the rapist (and who shortly thereafter deleted the messages and then deleted her entire account) to instances in which a plaintiff seeking anonymity had publicly spoken out in mediums available to millions of readers for the purpose of disclosing what happened and providing the defendant's identity.  But the Decision repeatedly does exactly this.

In Plaintiff's Declaration she explains why she sent a private message to two young women who she reasonably believed were in danger.  Doe Decl. ¶¶ 23-26. She further attached the email sent to her that caused this reasonable belief.  *Id*. Ex. A.  Moralez does not purport to allege, nor can he, that she would have known or even should have known that he was being impersonated on Twitter by some "unknown" stalker, as he claims or that the email was false.  It was reasonable for Plaintiff, who had just been raped by Moralez, to take the email seriously.   Absolutely no basis exists to conclude that by sending these two private messages she mooted the reasons for allowing her to proceed as Jane Doe in this action.  Such a result would be grossly unfair, especially

---

[10] The plaintiff alleged that as a result of consensual sex with defendant, she contracted herpes.  The title of the *New York Post* article that the plaintiff agreed to be interviewed for was "Fashion titan and Bill Clinton donor sued for 'herpes' date with woman he met online: suit." *See* https://nypost.com/2013/04/05/fashion-titan-and-bill-clinton-donor-sued-for-herpes-date-with-woman-he-met-online-suit/.

[11] *See* https://www.politico.com/media/story/2015/09/new-york-post-to-keep-expanding-its-national-footprint-004159/.

compared to a case where a plaintiff messaged to a publication with about 300,000 daily readers and a case with 18 million monthly readers.

The screenshots in exhibits A and B submitted by Moralez clearly shows that it was a "Friends Only" posting, which by definition is markedly different in context of a public Facebook account.[12] Telling people on a private account that she was raped and was reporting it to law enforcement (and thereafter deleting the posts) without including the name of the individual she alleges hurt her, is not comparable to posting on social media available to hundreds of millions (or billions) of people. Further, all of the cases cited in the Decision referring to public messaging involved a plaintiff who had specifically named the alleged perpetrator. And these cases involved the messaging of the filing of the civil action in which the victim wished to remain anonymous in. This action was commenced on April 5, 2023, and as such, there is no question that Ms. Doe was not disclosing her status as a rape victim for purposes of amplifying this court action.

Plaintiff never saw the one-page document attached to Moralez's declaration as Exhibit D prior to his filing it. Doe Decl. ¶ 34. Yet the Decision concludes that Ms. Doe "passed out flyers about the assault on SLU's campus." *Id*. at 7. In Exhibit D to his declaration, Defendant Moralez produced a sheet of paper displaying a QR code and the title "Hold SLU accountable." Dkt. No. 62, Ex. D. Simply because the paper's scan code is a link to the Complaint in this case (which is available on her lawyers' site, as are all active complaints), in no way means Plaintiff or her lawyers created this document. There is not a single fact alleged to show that Plaintiff, or her counsel, engaged in conduct relating to Exhibit D, he simply "says" that Ms. Doe and her lawyers did this.

---

[12] A Facebook user who allows their account to be publicly available, opens that user up to views by any person with internet access – an incomprehensible number of users that is estimated to be in excess of 3 billion monthly active users. *See* https://www.statista.com/statistics/264810/number-of-monthly-active-facebook-users-worldwide/. In the U.S. alone, the Facebook user base is estimated to be 250 million users in 2024. *See* https://www.statista.com/statistics/408971/number-of-us-facebook-users/.

Moralez Decl. ¶ 12.  As the attached declarations show, neither Plaintiff nor her lawyers had seen

the image on the page, which Defendant dubbed a flyer distributed by Ms. Doe before it was filed

in this action.  Doe Decl. ¶ 34; Christensen Decl. ¶¶ 7-11.

The Decision's eagerness to discount what Ms. Doe experienced and subject her to future

and unnecessary rape victim shaming is evidenced by the weight afforded to Exhibit D in the

Decision.  The Court opted to credit everything Defendant Moralez said as the truth, even without

a single fact explaining the document's creation, when it is common knowledge that any person

can go online and copy a website URL to create a QR code.  The only thing needed is internet

access, which is available to billions.  The process is simple and can be done in a few minutes or

even seconds.[13]  By definition, a QR Code is scannable, and thus placing it on the piece of paper

(Ex. D) and copying it is all a person needs to do.  The universe of persons who could have created

Exhibit D is in the millions, and the origin not traceable because the QR code is a static code.

Importantly, it was not created by anyone at Wigdor LLP or by Ms. Doe, or by someone else at her

direction.  Christensen Decl. ¶¶ 7-11; Doe Decl. ¶ 35.  It is alleged that the piece of paper attached

as Exhibit D was distributed on the SLU campus, but not a single piece of information shows who

did so, when this happened, or even how many copies were distributed.  As Ms. Doe affirms, since

April 14, 2022, she has not returned to the campus of SLU a single time.  *See also* Christensen

Decl. ¶ 9. (no lawyer or employee of our firm travelled to Canton NY at any time in 2022, 2023

or 2024 for purposes of this litigation or otherwise).  Blind acceptance of Exhibit D, to Ms. Doe's

clear detriment, was error, especially given that Moralez's lack of supporting proof is blatant.  See

Moralez Decl. ¶ 12.  Further, a quick Google search about the complaint in this action reveals that

a number of SLU student-based organizations engaged in questioning the administration about its

---

[13] See https://www.adobe.com/express/feature/image/qr-code-generator.

efforts to prevent sexual assaults on campus. It also shows that SLU publications reported on this action.[14]

Absolutely no evidence suggests that Ms. Doe, or anyone acting on her behalf, engaged in conduct to create Exhibit D, and denying the Motion based on this exhibit was highly prejudicial to Ms. Doe.

In *Doe #1 v. Syracuse Univ.*, 2020 WL 2028285 at *2, this Court held that while there is a strong public policy favoring public access to the judicial documents and proceedings, "the overriding concerns associated with requiring plaintiffs to divulge their identities ... weigh against granting defendants' motion to require plaintiffs to reveal their identities and therefore trump the public's presumptive right of access." Similarly, the overriding concerns with requiring Ms. Doe to reveal her identity, trumps the potential prejudice to Defendants and the public's presumptive right of access.

## VI.    The Court Can Reverse the Decision and Grant the Motion

It is within Your Honor's discretion to permit Plaintiff to proceed anonymously. Plaintiff must be afforded a substantial privacy right on the underlying allegations in this action. To date, her identity has been kept confidential and the public does not know her full name. The "public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." Doe No. 2, 242 F.R.D. at 195. Little public interest exists in the victim's identity as compared to a potential perpetrator's identity and Defendant Moralez can renew his objection in a motion *in limine* before trial. It was reversible error to conclude that on balance, the harm to the public and to Defendant Moralez by allowing

---

[14] *See*, for example, https://thehillnews.org/news/kelleydaphness/we-want-answers-field-report-from-student-lead-protest; https://thehillnews.org/opinions/anonymous/st-lawrence-reaps-what-it-sows-the-doe-case.

Plaintiff to proceed as Jane Doe outweighs the harm that Plaintiff will experience should she be forced to disclose her full name on the public docket for the duration of this action.[15]

## CONCLUSION

For the reasons stated above, the Court's Order of July 9, 2024 should be reversed in its entirety.

Dated: July 23, 2024
      New York, New York                       Respectfully Submitted,

                                        **WIGDOR LLP**

By: _____
                                     Jeanne M. Christensen
                                     Brooke Payton (admission pending)

                                   85 Fifth Avenue
                                   New York, NY 10003
                                   Telephone: (212) 257-6800
                                   Facsimile: (212) 257-6845
                                   jchristensen@wigdorlaw.com
                                   bpayton@wigdorlaw.com

                                   *Counsel for Plaintiff*

---

[15] In the alternative, if the Court does not wish to place the additional information in the attached declarations on the record, it can grant Plaintiff permission to re-file her Motion.