**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JANE DOE,

                                        Plaintiff,                          8:23-cv-00426 (BKS/DJS)

v.

ST. LAWRENCE UNIVERSITY, and ERNESTO
MORALEZ, in his individual and professional capacity,

                                        Defendants.

---

ERNESTO MORALEZ,

                                        Counter-Claimant,

v.


JANE DOE,

                                        Counter-Defendant.

---

**Appearances:**

*For Plaintiff:*
Jeanne M. Christensen
Wigdor LLP
85 Fifth Avenue
New York, NY 10003

*For Defendant St. Lawrence University:*
Jacqueline Phipps Polito
Erin M. Train
Littler Mendelson, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, NY 14450

*For Defendant Ernesto Moralez:*
Andrew T. Miltenberg
Stuart Bernstein
Helen J. Setton
Nesenoff & Miltenberg, LLP
363 Seventh Avenue, Fifth Floor
New York, NY 10001

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Jane Doe, proceeding under a pseudonym, brings this action against Defendants

St. Lawrence University ("SLU") and Ernesto Moralez alleging employment discrimination

stemming from SLU's response to Plaintiff's claims that Moralez sexually assaulted and raped

her as well as several claims directly related to the alleged assault. (*See generally* Dkt. No. 43).

Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, Title

IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 et seq., and New York state

law. (*Id.*). Moralez has filed counterclaims under New York state law, alleging defamation and

intentional infliction of emotional distress. (*See generally id.*). Presently before the Court is

Plaintiff's appeal, (Dkt. Nos. 70–73), of United States Magistrate Judge Daniel J. Stewart's

Order, (Dkt. Nos. 63, 64), denying Plaintiff's motion to proceed under a pseudonym, (Dkt. No.

49). Plaintiff requests that the Court consider new evidence as part of her appeal or, alternatively,

grant leave to refile her motion to proceed by pseudonym. (Dkt. No. 71, at 1 & n.1). Defendant

Moralez opposes Plaintiff's appeal.[1] (Dkt. No. 78). The appeal has been fully briefed. (Dkt. Nos.

70–73, 78–79). For the reasons that follow, Plaintiff's appeal and request to refile are denied.

---

[1] SLU has not opposed or otherwise responded to Plaintiff's motion to proceed under a pseudonym or her appeal. Accordingly, all references herein to "Defendant" concern Moralez unless otherwise noted.

## II.    BACKGROUND

Plaintiff filed this action under a pseudonym. (Dkt. No. 1). Defendant objected to

Plaintiff's use of a pseudonym in his Answer, (Dkt. No. 12, at 1 n.1), and, on April 11, 2024,

filed a letter noting that Plaintiff filed the present action by pseudonym "without seeking the

Court's approval by way of motion" and requesting that Plaintiff "no longer be permitted to

proceed anonymously in this matter," (Dkt. No. 47). On April 12, 2024, Plaintiff filed a response

to Defendant's letter and requested permission to file a motion to "proceed anonymously." (Dkt.

No. 48). On April 15, 2024, Plaintiff filed a motion for leave to proceed under a pseudonym,

which was referred to Magistrate Judge Stewart. (Dkt. No. 49). Defendant timely opposed

Plaintiff's motion on May 24, 2024. (Dkt. Nos. 60, 61). Plaintiff did not seek to file a reply.

Magistrate Judge Stewart issued an Order denying Plaintiff's motion on July 9, 2024. (Dkt. No.

63).

### A.    Evidence Before the Magistrate Judge

The parties provided the following evidence to Magistrate Judge Stewart in connection

with their briefing on the motion: a declaration by Plaintiff's attorney (Dkt. No. 49-2) and a

declaration by Defendant, including four exhibits, (Dkt. Nos. 60, 60-5–60-8). The following is a

summary of this evidence.

#### 1.    Plaintiff's Attorney's Declaration

In her declaration Plaintiff's attorney asserted the following. (Dkt. No. 49-2). "[S]everal

days after [Plaintiff] was sexually assaulted[,]" she notified Defendant SLU "about what

happened at Defendant Moralez's . . . house on April 12, 2022[]" and "did so in a confidential

manner by emailing only the appropriate individuals at SLU." (*Id.* ¶ 2). "To date, Plaintiff has

not made any statements to media outlets about this action or her allegations[,]" nor has

"Plaintiff publicly post[ed] Moralez's name or identity on Facebook or any other social media

platform." (*Id.* ¶¶ 3, 6). Further, "Plaintiff had changed the privacy settings on her Facebook

account by May or June of 2022, and ended her account with Facebook by September or October

2022." (*Id.* ¶ 5). Plaintiff submitted no exhibits or other evidence in support of her motion.

### 2. Defendant's Declaration

Defendant attests to the following facts. Defendant, who was an assistant professor at

SLU during the relevant time period, has "worked [his] entire life to become a reputable

academic." (Dkt. No. 60, ¶¶ 2, 17). However, "the damage to [Defendant's] reputation from

Plaintiff's actions including the filing of this lawsuit cannot be overstated." (*Id.* ¶ 16). Defendant

has "been unable to secure a teaching position at any level" since he left SLU, and he was

"removed as the lead author of an upcoming public health textbook directly as a result of

Plaintiff's allegations and the media attention they received." (*Id.* ¶¶ 18, 19).

Defendant was "shocked" when Plaintiff filed the Complaint using a pseudonym as she

"ha[d] been very vocal and public about her sexual assault allegations against [Defendant]" prior

to commencing this action. (*Id.* ¶¶ 3, 11). In support of this assertion, Defendant filed four

exhibits: screenshots of Plaintiff's Facebook posts, (Dkt. No. 60-1; Dkt. No. 60-2); copies of

Plaintiff's Facebook messages, (Dkt. No. 60-3); and a copy of a flyer that was distributed on the

SLU campus, (Dkt. No. 60-4). According to Defendant, on or about April 18, 2022, six days

after the alleged sexual assault, Defendant's "friend and colleague" sent him screenshots of "two

Facebook posts posted by the Plaintiff using her own name.""[2] (Dkt. No. 60, ¶ 4). Plaintiff's first

Facebook post states,

> NOT MY SHAME: a colleague raped me anally and vaginally at
> work last week. I survived. I am home with my incredible family. I
> am reclaiming my voice. I am on leave till [sic] sabbatical. And I

---

[2] Although Defendant asserts that Plaintiff's "profile [was] set to a public setting," Exhibits A and B appear to indicate
that Plaintiff's Facebook posts were viewable by her Facebook "friends" rather than the public at large. (*See* Dkt. Nos.
60-5, 60-6).

> am pressing this as hard as I can in honor of all his victims before
> me. And all the women in academia who are raped. And all the
> women everywhere who are raped. Don't brutally rape one of the
> best social justice advocates in the world unless you're ready.

(Dkt. No. 60-5). "By the time the screenshot of [this] post was taken, 21 individuals had already

'reacted' to it." (Dkt. No. 60, ¶ 6; *see* Dkt. No. 60-5). Plaintiff's second Facebook post is a

picture of her "smiling in front of a door that says 'CHIEF OF POLICE' with the caption:

'Trying to contain my excitement. Pressing 1st and 2nd-degree rape charges [emoji of an arm

flexing].'" (Dkt. Nos. 60, ¶ 7, 60-6); *see also* Dkt. No. 46, ¶ 45 (Plaintiff admitting she posted

this photo on her Facebook)). When the screenshot of this post was taken, "15 individuals had

already 'reacted' to it[,]" (Dkt. No. 60, ¶ 7), and nine people had commented, (Dkt. No. 60-6).

Defendant further asserts that he learned that on May 20, 2022, Plaintiff sent the

following "Facebook messages to at least two people including [Defendant's] friend's

daughters":

> Hello []- I'm really sorry to reach out but do you know Ernesto
> Moralez? I saw he sent you a message on twitter. He's currently
> under criminal and title ix [sic] investigation for rape and I'm his
> most recent victim. I wanted to warn you and also encourage you to
> talk with me if your [sic] comfortable here or I can send you email /
> phone. This is probably strange but he and I are both professors and
> it looks like you might be a student? Please take care and do reach
> back out if you can.

(*Id.* ¶ 9; Dkt. No. 60-7; Dkt. No. 12, at 49; *see also* Dkt. No. 46, ¶ 57 (Plaintiff admitting she

sent the two messages)).[3] According to Defendant, "Plaintiff did not ask the recipients of her

Facebook messages to keep the allegations confidential and in fact they were not kept

---

[3] A screenshot of the message to the second individual was provided in Defendant's Answer, (Dkt. No. 12, at 49), which appears identical to Exhibit C but is cut off after "I wanted to warn you and also encourage . . . " (*see id.*). Because Plaintiff admits in her Answer, (Dkt. No. 46), that "she sent the text messages attached as Exhibit A, and the messages speak for themselves[,]" (*id.* ¶ 57), the Court presumes the messages are identical in their entirety.

confidential as the recipients shared the messages with their parents, who shared them with [Defendant]." (Dkt. No. 60, ¶ 10).

Finally, Defendant asserts that "after Plaintiff had filed this action anonymously, Plaintiff and her attorneys deliberately sought to garner public attention to the action[,] particularly on SLU's campus by distributing flyers on SLU's campus." (*Id.* ¶ 12). The flyer reads: "'Hold SLU accountable' in bold red letters followed by 'Stop SLU from protecting predators. Stop SLU from endorsing sexual assault. Protect students and faculty' with a QR Code and a link to the Complaint listed on Plaintiff's counsel's website (and a 'trigger warning' 'SA statement from SLU employee.'" (*Id.* ¶ 13). Defendant asserts that "[t]he link remains active today." (*Id.*). Furthermore, this case "has received significant media attention and Plaintiff's counsel's statements regarding the lawsuit were reported by numerous media outlets." (*Id.* ¶ 15 (citing five articles from various media outlets reporting the case)).[4]

### B.    Procedural History

#### 1.    Magistrate Judge Stewart's Order

The Court presumes the parties' familiarity with the facts as described in the Order. (Dkt. No. 63). As set forth in more detail below, Magistrate Judge Stewart considered all of the factors identified by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008), as applied to this action. (*See generally* Dkt. No. 63). Ultimately, he concluded that "[a]lthough this case involves highly sensitive and personal allegations, all other factors weigh against granting Plaintiff's motion." (*Id*. at 12). Magistrate Judge Stewart therefore denied Plaintiff's motion, (*id.*), and directed Plaintiff to file an amended complaint under her name and to remove all references to "Jane Doe," (Dkt. No. 64).

---

[4] Plaintiff is not identified in any of the news articles; Defendant is named in at least two of the articles. (*See* Dkt. No. 60, ¶ 15 n.2 (citing articles)).

### 2.    New Evidence on Appeal

On appeal, Plaintiff relies heavily on new evidence that was not before Magistrate Judge Stewart, including, inter alia, a personal declaration, and a declaration and letter by her medical providers.  (Dkt. Nos. 72, 73). Plaintiff asserts in a footnote, without citation to legal authority, that it "is within the Court's discretion" to accept her declaration and the attached exhibits. (Dkt. No. 71, at 5 n.1; *see also* Dkt. No. 79, at 14 n.4). "Alternatively," Plaintiff requests that the Court "consider allowing her to refile" her motion to proceed by pseudonym with the new evidence. (Dkt. No. 71, at 5 n.1). Defendant opposes the Court's consideration of this evidence on the ground that it is evidence "outside the record and submitted for the first time on appeal." (Dkt. No. 78, at 11–12). Thus, as a preliminary matter, the Court must address whether it can consider the new evidence Plaintiff submitted in support of her appeal.

Rule 72(a) of the Federal Rules of Civil Procedure governs nondispositive matters and generally "precludes the district court from considering factual evidence that was not presented to the magistrate judge." *Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013) (citing *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs.*, 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) ("Defendants have not cited any case, and the Court has not found one, in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge.")). As the court explained in *Creighton v. City of New York*,

> "While the Court is generally not precluded from considering additional evidence not submitted by a party to a magistrate judge when reviewing a report and recommendation issued by such judge on a dispositive motion [pursuant to Rule 72(b) of the Federal Rules of Civil Procedure], there is nothing in Rule 72(a) of the Federal Rules of Civil Procedure which states that it may do so on a non-dispositive issue, such as that decided here." As a result, courts have held that "Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge."

> Although a district court has the "inherent authority" to "consider further evidence in reviewing rulings on nondispositive matters," "such discretion should rarely be exercised" in this context, because "the district court functionally operates as an appellate tribunal under Rule 72(a)."

No. 12-cv-7454, 2015 WL 8492754, at *5, 2015 U.S. Dist. LEXIS 165757, at *14–16 (S.D.N.Y. Dec. 9, 2015) (citations omitted); *see also In re B&C KB Holding GmbH*, No. 22-mc-180, 2023 WL 4544775, at *2, 2023 U.S. Dist. LEXIS 122940, at *4–5 (S.D.N.Y. June 8, 2023); *In re Batbold*, No. 21-mc-218, 2023 WL 2088524, at *3, 2023 U.S. Dist. LEXIS 27532, at *10 (S.D.N.Y. Feb. 17, 2023).

Here, Plaintiff has been on notice of Defendant's objection to her anonymity and his intention to formally oppose her use of a pseudonym since his Answer was filed on May 22, 2023. (Dkt. No. 12, at 1 n.1). When Plaintiff filed her motion to proceed anonymously, she submitted a declaration by her attorney, but no evidence in support of her motion. (Dkt. No. 49). More than six weeks elapsed before Magistrate Judge Stewart issued the Order. (Dkt. Nos. 60, 63). During that time, Plaintiff did not request leave to file a reply pursuant to Local Rule 7.1(a)(2).[5] In connection with her appeal, however, Plaintiff filed a personal declaration, (Dkt. No. 72), a declaration by her attorney, (Dkt. No. 73), a letter dated July 22, 2024 from Elizabeth K. Nickerson, MD, a psychiatrist, (Dkt. No. 72-3), a declaration by Margaret Aitken, D.N.P., APRN, Plaintiff's primary care physician, (Dkt. No. 72-4), and two law review articles, (Dkt. Nos. 73-2, 73-3), none of which were presented to Magistrate Judge Stewart.

Defendant objects to the consideration of evidence outside the record before Magistrate Judge Stewart, and further asserts that even if the Court were to consider the newly submitted

---

[5] Pursuant to Local Rule 7.1(a)(2), a party must request leave from the Court to submit a reply to opposition papers on a nondispositive motion. L.R. 7.1(a)(2).

evidence, Plaintiff still has not shown sufficient basis for proceeding anonymously. (Dkt. No. 78, at 11–12). Plaintiff has not meaningfully acknowledged this issue. Because the declarations and other evidence submitted by Plaintiff on appeal were not before Magistrate Judge Stewart when he issued the Order and because Plaintiff fails to offer any explanation for failing to include these submissions as part of her original motion, the Court declines to consider the new evidence. *See Michael Grecco Prods. v. Alamy Inc.*, No. 18-cv-3260, 2022 WL 198502, at *5, 2022 U.S. Dist. LEXIS 11488, at *16 (E.D.N.Y. Jan. 21, 2022) (finding a "failure to timely produce the additional documents" to the Magistrate Judge "justifies . . . declining to consider them" on appeal); *Creighton*, 2015 WL 8492754, at *5, 2015 U.S. Dist. LEXIS 165757, at *14–16 (declining to consider evidence submitted for the first time on appeal). However, as discussed below, even if the Court were to consider Plaintiff's newly submitted evidence, it would still affirm Magistrate Judge Stewart's decision.

## III.    STANDARD OF REVIEW

A motion to proceed under a pseudonym is a nondispositive matter. *United States v. Pilcher*, 950 F.3d 39, 44–45 (2d Cir. 2020). The district court reviews a magistrate judge's nondispositive order under the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *see Kiobel v. Millson*, 592 F.3d 78, 88 (2d Cir. 2010). "An order is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed. An order is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F. Supp. 2d 70, 74 (N.D.N.Y. 2000). "Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving nondispositive disputes and reversal is appropriate only if their discretion is abused." *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (quoting *Thai Lao Lignite (Thailand) Co.*, 924 F. Supp. 2d at 511).

## IV.    DISCUSSION

### A.    Applicable Law

As a general rule, parties may not litigate their disputes anonymously; "[t]he people have a right to know who is using their courts." *Sealed Plaintiff*, 537 F.3d at 189 (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)). Thus, Rule 10(a) of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a); *see also* Fed. R. Civ. P. 17(a)(1) ("An action must be prosecuted in the name of the real party in interest"). "This requirement . . . serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff*, 537 F.3d at 188–89; *see also Publicola v. Lomenzo*, 54 F.4th 108, 112–13 (2d Cir. 2022). In fact, "pseudonyms are the exception and not the rule, and in order to receive the protections of anonymity, a party must make a case rebutting that presumption." *Pilcher*, 950 F.3d at 45. The decision as to whether such an exception should be made "is entrusted to the sound discretion of the court . . . and requires a careful and fact-specific examination into the circumstances of the case at hand." *Doe #1 v. Syracuse Univ.*, No. 18-cv-496, 2018 WL 7079489, at *3, 2018 U.S. Dist. LEXIS 154899, at *7 (N.D.N.Y. Sept. 10, 2018) (citation omitted), *report-recommendation adopted by* 2020 WL 2028285, 2020 U.S. Dist. LEXIS 74233 (N.D.N.Y. Apr. 28, 2020).

To decide whether a plaintiff may be allowed to prosecute an action using a pseudonym, courts must balance 1) the plaintiff's interest in anonymity against 2) the public interest in disclosure, and 3) any prejudice to the defendant. *Sealed Plaintiff*, 537 F.3d at 189. The Second Circuit "note[d] with approval" ten factors that may be relevant to this determination, "caution[ing] that this list is non-exhaustive and district courts should take into account other factors relevant to the particular case under consideration:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure. . . particularly in light of his [or her] age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 189–90 (internal quotation marks and citations omitted). The Second Circuit has further explained, "[o]f course, a district court is not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id.* at 191 n.4. The party seeking anonymity bears the "burden to establish that after balancing these competing interests, the scale tips in [their] favor." *Doe v. Delta Air Lines, Inc.*, No. 23-cv-931, 2023 WL 7000939, at *2, 2023 U.S. Dist. LEXIS 192694, at *5 (E.D.N.Y. Sept. 7, 2023).

  **B. Analysis of the *Sealed Plaintiff* Factors**

    **1. First Factor - Highly Sensitive Matters of a Personal Nature**

  The first *Sealed Plaintiff* factor inquires "whether the litigation involves matters that are highly sensitive and [of a] personal nature." *Sealed Plaintiff*, 537 F.3d at 190. In the Order, Magistrate Judge Stewart recounted Plaintiff's claims "that she was drugged and sexually assaulted" and "brutally raped" by Defendant, and that after the incident, he "continued to

sexually harass her." [6] (Dkt. No. 63, at 2, 4–5). Magistrate Judge Stewart recognized that "[t]hese allegations are highly sensitive and of an extremely personal nature to the Plaintiff." (*Id.* at 4 (citation omitted)). Magistrate Judge Stewart found that the first factor weighs "heavily" in favor of anonymity. (*Id.* at 4–5).

Plaintiff characterizes the first factor as "the critical factor in this action," and argues that Magistrate Judge Stewart "failed to attribute substantial weight" to the fact that "rape (especially anal rape) is a 'matter of sensitive and highly personal nature.'" (Dkt. No. 71, at 10). This is without merit in light of Magistrate Judge Stewart's conclusion that this factor weighed "heavily" in favor of anonymity. To the extent Plaintiff is arguing that Magistrate Judge Stewart should have found that the highly sensitive and personal nature of the facts in this case, on their own, outweigh any public interest or prejudice to Defendant the Court disagrees. Such a finding, without balancing the first factor against the factors relevant to public interest or prejudice to a defendant, would constitute legal error. Courts in the Second Circuit have consistently held that a finding in favor of anonymity on this factor is not dispositive. *See*, *e.g.*, *Doe v. Skyline Autos. Inc.,* 375 F. Supp. 3d 401, 405–06 (S.D.N.Y. 2019) (fact that plaintiff's allegations were "highly sensitive and of an extremely personal nature," was "not dispositive, and the other factors must be taken into consideration and analyzed in comparison to the public's interest and the interests of the opposing parties); *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) (finding first factor weighed in favor of anonymity based on allegations of sexual assault but noting "this

---

[6] To the extent Plaintiff claims Magistrate Judge Stewart overlooked evidence in the record regarding "stigma and shame," her claim lacks merit. (Dkt. No. 71, at 11 (asserting that Plaintiff's original motion "included a declaration that because of the stigma and shame attached to rape that her harm would be substantial if she had to use her full name on the public docket"). As Plaintiff did not file a personal declaration in support of her original motion, this appears to be a reference to her attorney's declaration. (*See* Dkt. No. 49-2). Plaintiff's attorney, however, lacks personal knowledge and, in any event, makes no reference to stigma or shame. Thus, there is no basis to find that Magistrate Judge Stewart overlooked any evidence.

factor is not dispositive"); *Doe v. Townes*, 2020 WL 2395159, at *3, 2020 U.S. Dist. LEXIS 83550, at *8–9 (S.D.N.Y. 2020) (same). Therefore, the Court finds no error in connection with Magistrate Judge Stewart's consideration of the first factor.

### 2.    Second Factor - Risk of Retaliatory Physical or Mental Harm

The second *Sealed Plaintiff* factor inquires "whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties[.]" *Sealed Plaintiff*, 537 F.3d at 190. In the Order, Magistrate Judge Stewart explained that "where a plaintiff claims that disclosure will harm their mental health, courts in this Circuit look for corroboration from medical professionals that detail the risk to plaintiff." (Dkt. No. 63, at 5 (citing *Weinstein*, 484 F. Supp. 3d at 95)). Magistrate Judge Stewart then summarized Plaintiff's assertion that disclosure would harm her mental health as follows:

> Plaintiff claims generally and without medical corroboration that her "experiences as described in the Complaint are deeply traumatic, and having those experiences played out in a public forum could spark more trauma for Plaintiff." Dkt. 49-1 at p. 4. Plaintiff also states that she "has engaged in ongoing extensive mental health treatment. If she is forced to reveal her identity to the public, she would experience significant harm." *Id.*

(Dkt. No. 63, at 6). Noting again the absence of "corroborating medical evidence," Magistrate Judge Stewart found that Plaintiff failed to "identif[y] any particularized harm that would result from publicly disclosing her identity," and concluded that the second factor weighed against anonymity. (*Id.* at 6–7).

Plaintiff argues that because she does not claim a fear of retaliation, Magistrate Judge Stewart should have omitted the second factor or found it neutral. (Dkt. No. 71, at 15). Plaintiff cites no support for ignoring the issue of mental harm and, as the risk to Plaintiff's mental health

is indisputably relevant here, Plaintiff's argument that the Magistrate Judge Stewart should have disregarded the second factor is without merit.

Plaintiff's argument that Magistrate Judge Stewart "improperly categoriz[ed] [the second] factor in with its analysis of 'plaintiff's confidentiality thus far in the litigation,'" (Dkt. No. 71, at 15), is also without merit. As discussed below, Magistrate Judge Stewart fully considered the second factor on its own and as part of the overall balancing test.

Plaintiff cites as error Magistrate Judge Stewart's statement that "the Court cannot rely on generalized, uncorroborated claims that disclosure would harm Plaintiff to justify her anonymity," (Dkt. No. 71, at 10 (citing Dkt. No. 63, at 2)). Plaintiff asserts that "[c]ountless courts, including in this circuit, have allowed a plaintiff to proceed under a pseudonym without attaching medical documentation where revealing the plaintiff's name subjects him or her to the risk of public disapproval, shame, harassment, or bodily harm." (Dkt. No. 71, at 9 (collecting cases)). The Court disagrees. Courts frequently require "corroborating medical testimony" or other medical evidence "to demonstrate psychological harm." *Trooper 1 v. New York State Police*, No. 22-cv-893, 2022 WL 22869548, at *3, 2022 U.S. Dist. LEXIS 252883, at *10 (E.D.N.Y. June 9, 2022) (quoting *Doe v. Freydin*, No. 21-cv-8371, 2021 WL 4991731, at *2, 2021 U.S. Dist. LEXIS 208637, at *4 (S.D.N.Y. Oct. 27, 2021)). Further, the cases Plaintiff cited for the proposition that medical evidence is not a necessary component of an application to proceed by pseudonym are inapposite. In those cases, there were sufficient showings of *other* harm linked directly to disclosure of a plaintiff's name. These harms included, for example, the "chilling effect" of revealing a plaintiff's name in high-profile case alleging sexual harassment against the former governor of New York, *see Trooper 1*, 2022 WL 22869548, at *4, 2022 U.S. Dist. LEXIS 252883, at *11 (finding the plaintiff "had not offered evidence sufficient to

establish" the risk of retaliatory physical or mental harm but that the risk of "other harms,"

specifically, the "high-profile nature of the case" and the "chilling effect" from the plaintiff

having "to reveal her identify," weighed in favor of pseudonym), retaliatory harm, *see Does 1-4

v. Foukas*, No. 20-cv-5516, 2021 WL 8892823, at *2, 2021 U.S. Dist. LEXIS 259186, at *5

(E.D.N.Y. Mar. 20, 2021) (finding "prior threats of physical violence and history of stalking" by

the defendant made "the potential retaliatory risk . . . more than speculative"), *vacated on other

grounds by* 2022 WL 22354580, 2022 U.S. Dist. LEXIS 249461 (E.D.N.Y. July 6, 2022), and

the danger of physical violence, *see Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *5, 2018

U.S. Dist. LEXIS 154899, at *14 (finding legitimate "concerns of retribution, including the

potential for physical violence," a "plainly serious" stigma associated with the defendants' public

proclamation that the plaintiffs were "racist, anti-Semitic, homophobic, sexist, and hostile to

people with disabilities").

Thus, as the record before Magistrate Judge Stewart contained no evidence—medical or

otherwise—showing any harm that would result from Plaintiff using her own name "beyond the

trauma that she already bears from the underlying allegations," *Doe v. Gooding*, No. 20-cv-

06569, 2022 WL 1104750, at *6, 2022 U.S. Dist. LEXIS 68607, at *15 (S.D.N.Y. Apr. 13,

2022), Magistrate Judge Stewart properly found no basis for weighing the second factor in favor

of anonymity. (Dkt. No. 63, at 6–7); *see also Gooding*, 2022 WL 1104750, at *6, 2022 U.S. Dist.

LEXIS 68607, at *15 (finding the plaintiff's "predictions of psychological harm" "too

amorphous to tilt decidedly in favor of a pseudonym[]" where plaintiff did not "explain[] how

revealing her name would cause unique harm beyond the trauma that she already bears from the

underlying allegations").

In an attempt to fill this gap in the record, Plaintiff filed new evidence on appeal: a letter by Elizabeth Nickerson, M.D., a psychiatrist at the University of Vermont Medical Center, Seneca Center (Dkt. No. 72-3), a declaration by Margaret Aitken, D.N.P, APRN, who has been Plaintiff's primary care physician since 2017, (Dkt. No. 72-4), and her own declaration, (Dkt. No. 72). As discussed in section II.B.2., the Court declines to consider this evidence as it was not submitted to Magistrate Judge Stewart in the first instance. But even if it were to consider the evidence, the Court would deny Plaintiff's appeal.

"Even where plaintiffs have presented affidavits, courts frequently reject claims of psychological harm and career damage where the affidavits are vague or speculative." *Doe v. Black Diamond Cap. Mgmt. LLC*, No. 22-cv-03194, 2023 WL 2648017, at *4, 2023 U.S. Dist. LEXIS 52120, at *12 (S.D.N.Y. Mar. 27, 2023); *see also Rapp v. Fowler*, 537 F. Supp. 3d 521, 529–30 (S.D.N.Y. 2021) (noting, *inter alia*, that neither medical declaration suggested that "any of [plaintiff's prior] disclosures 'to the media [and] friends' retriggered [plaintiff's] PTSD or, if they did not, why further disclosure would yield a different outcome[,]" nor gave "any sense of the severity of any consequences of a 'retriggering' of the alleged PTSD by future disclosure . . . beyond the conclusory statements that it would entail anxiety, nightmares, and depression"). "[C]ourts have required a link between public disclosure of the plaintiff's name and the described psychological risk." *Id.* at 529; *see Doe v. Del Rio*, 241 F.R.D. at 161 (S.D.N.Y. 2006) (noting that "nothing in the therapist's letter or plaintiffs' other papers establishes any link between *public disclosure of plaintiff's name* and the described psychological risk to Jane Doe).

In her letter, Dr. Nickerson, who evaluated Plaintiff on August 8, 2023, "as part of the admission process to the intensive outpatient clinic at Seneca Center," states that Plaintiff's "primary diagnosis is PTSD (post-traumatic stress disorder)," but was also "diagnosed with

Major Depressive Disorder." (Dkt. No. 72-3, at 2). "Under [Dr. Nickerson's] supervision and the care of [the Seneca Center] therapists, [Plaintiff] received intensive treatment for ten days in September 2023," and then "transitioned to the Mood and Anxiety Clinic" for weekly treatment. (*Id.*). Dr. Nickerson opines that "forcing [Plaintiff] to proceed in her lawsuit without a pseudonym would have substantial negative, debilitating effects on her emotionally, mentally, and physically," and "it would very likely negatively impact the progress she has made in the 26.5 months since the sexual assault occurred." (*Id.*). Furthermore, Dr. Nickerson notes that Plaintiff "no longer has medical insurance and is not receiving treatment," and states that without "therapeutic support, she is even more vulnerable to a negative impact of having to disclose her identifying information publicly in connection with her rape trauma." (*Id.*).

In her declaration, Dr. Aitken, Plaintiff's primary care physician, (Dkt. No. 72-4, ¶¶ 1–2), outlines Plaintiff's trauma and referral to intensive outpatient treatment, treatment notes, and efforts to return to teaching. (Dkt. No. 72-4, ¶¶ 1–12). Dr. Aitken states that Plaintiff "continues to suffer from PTSD and major depressive disorder[]" and "continues to experience uncontrollable crying, panic and severe anxiety when events from April 12–13, 2022 are discussed." (*Id.* ¶¶ 13–14). Dr. Aitken opines that if Plaintiff is required to identify herself in this action, "she will be subjected to mental, emotional, and psychological harm that for [Plaintiff] manifests in PTSD episodes"; that identification "will undo the effort and resources that she has engaged in, for more than two years, in an effort to heal from the trauma"; and that because her "PTSD is easily triggered and she already suffers from heightened shame and stigma as a rape victim[,] [f]orcing her to self-identify . . . will be highly debilitating. (*Id.* ¶¶ 15–17).

In her declaration, Plaintiff states that following the events at issue, she has taken steps to protect her privacy, including moving her "family to a completely new town after the rape,"

permanently deleting her Facebook account, and not "return[ing] to any social media platforms." (Dkt. No. 72, ¶¶ 29, 51–52). Plaintiff avers that she continues "to experience debilitating PTSD that is triggered whenever [she] is reminded about the events of April 12–13, 2022" and that when her "PTSD is triggered," she experiences "panic, uncontrollable crying, shaking, and a flood of acute stress and anxiety that makes me anticipate worse case scenarios and fear for [her] personal safety." (Id. ¶¶ 39–40, 49). As a result, Plaintiff has been unable to return to the SLU campus and cannot think about returning to the SLU or any "other college campuses" without experiencing "debilitating trauma." (*Id.* ¶ 42; *see also id.* ¶ 45 (discussing the "flashbacks and floods of anxiety of even the thought of returning to the classroom")). Plaintiff further avers that "having to disclose the trauma of being raped, including anal rape, would mean disclosing details that my own children do not know." (*Id.* ¶ 54). Plaintiff states that she cares "very much about [her] identity being labeled publicly as a rape-victim" and "[i]n the last two years, the shame and mental and emotional distress have been overwhelming." (*Id.* ¶ 59). Plaintiff explains that "[b]eing forced to subject [herself] to public shaming for what happened to [her]—something [she] never asked for because no one wants to be a rape victim—will be further harm that is unjust and unnecessary." (*Id.* ¶ 62).

Though Plaintiff has described ongoing and severe "PTSD episodes," and the Court is mindful of the seriousness of these allegations, it is by no means clear that the risk of harm from the disclosure of her identity, is any different from the risk of harm posed by the remembrance or discussion of the events at issue. Indeed, Plaintiff states that she experiences "debilitating PTSD that is triggered whenever I am reminded about the events of April 12-13, 2022." (Dkt. No. 72, ¶ 39). Drs. Aiken and Nickerson's conclusory statements about the debilitating effect of requiring Plaintiff to proceed without a pseudonym is insufficient to establish a link between public

disclosure of Plaintiff's name and the described psychological harm because they do not predict consequences "specifically result[ing] from public disclosure of plaintiff's name," as opposed to the inevitable consequence of this litigation. And "the risk must arise *from the revelation of identity*, not simply the litigation itself and the inevitable re-living of events in depositions, trial testimony, and cross-examination." *Doe v. Juan Gonzales Agency Corp.*, No. 21-cv-00610, 2022 WL 3100669, at *3, 2022 U.S. Dist. LEXIS 138996, at *8 (S.D.N.Y. Aug. 4, 2022). In *Doe 3 v. Indyke*, No. 24-cv-1204, 2024 WL 4299757, at *2, 2024 U.S. Dist. LEXIS 175267, at *6 (S.D.N.Y. Sept. 26, 2024), for example, the plaintiff introduced medical evidence showing that in addition to fearing "shame and humiliation if it were to become publicly known that she was abused by Epstein," the plaintiff feared "being physically stalked and threatened" if her name was disclosed as well as "retaliation from the vast network of wealthy and powerful individuals associated with Epstein." (Internal quotation marks omitted). The court therefore concluded that this evidence showed that "the idea of disclosure causes [the plaintiff] a great deal of distress; disclosure would amplify that harm." *Id.* 2024 WL 4299757, at *2, 2024 U.S. Dist. LEXIS 175267, at *6; *see also Smith*, 105 F. Supp. 2d at 43–44 (relying on medial evidence that the plaintiff suffered from "dissociative identity disorder" and that "proceeding publicly would cause [the plaintiff] to decompensate psychologically to a point at which she could not . . . pursue the current legal process and would suffer severe risk to her safety and to her survival in finding that "the plaintiff has presented particularized and undisputed evidence that proceeding publicly would seriously threaten her mental health, requiring her to choose between dropping her action and placing her life in jeopardy"). Here, Plaintiff has not submitted evidence of a risk specifically linked to disclosure of her identity, as opposed to a general risk of triggering PTSD episodes, which, according to Dr. Aitken and Plaintiff herself, can arise from remembering or

discussing the events underlying this action. (Dkt. No. 72-4, ¶¶ 13–14; Dkt. No. 72, ¶ 39).[7] Thus, even if it considered this evidence, the Court finds that balancing all of the relevant *Sealed Plaintiff* factors, Plaintiff has not shown that her interest in anonymity outweighs the public interest in disclosure and the potential prejudice to the Defendants.

### 3. Other Harms and the Likely Severity Thereof

The third *Sealed Plaintiff* factor inquires "whether identification presents other harms and the likely severity of those harms." *Sealed Plaintiff*, 537 F.3d at 190. In the Order, Magistrate Judge Stewart found Plaintiff presented no evidence of other harms and therefore concluded that this factor weighs against anonymity. (Dkt. No. 63, at 7).

Plaintiff does not advance a specific argument as to the third factor (Dkt. No. 71, at 18). Upon a plaintiff's failure to raise such allegations, courts that address all ten factors have weighed this factor against anonymity. *See, e.g.*, *Doe v. Leonelli*, No. 22-cv-3732, 2022 WL 2003635, at *3, 2022 U.S. Dist. LEXIS 100895, at *10 (S.D.N.Y. June 6, 2022) ("The absence of any other potential harms weighs against proceeding pseudonymously"); *Weinstein*, 484 F. Supp. 3d at 96; *see also Roe v. Doe*, No. 20-cv-3788, 2020 WL 6152174, at *2, 2020 U.S. Dist. LEXIS 195137, at *4 (E.D.N.Y. Oct. 14, 2020) ("When Plaintiff has not sufficiently shown that a factor weighs in favor of proceeding anonymously, the Court will deem that factor as weighing against him [or her]."). Having presented no evidence on this factor, it does not weigh in

---

[7] Plaintiff states that she is very concerned about being "labeled publicly as a rape-victim," and that identifying herself will subject her to "public shaming," but these concerns are not weighed as privacy interests. *See Abdel-Razeq v. Alvarez & Marsal, Inc.*, 14-cv-5601, 2015 WL 7017431, at *3, 2015 U.S. Dist. LEXIS 153200, at *8 (S.D.N.Y. Nov. 12, 2015) ([T]he potential for embarrassment or public humiliation does not, without more, justify a request for anonymity"); *Townes*, 2020 WL 2395159, at *4, 2020 U.S. Dist. LEXIS 83550, at *12–13 (finding second and third factor weighed against anonymity where "psychological distress" stemmed from the plaintiff's fear that disclosure would subject her to "the shame that may women endure after having been victims of sexual harassment and assault," explaining that to hold otherwise would essentially allow "nearly any plaintiff alleging sexual harassment and assault" to proceed anonymously).

Plaintiff's favor, and the Court finds no clear error or error of law in Magistrate Judge Stewart's analysis of this factor..

### 4.    Particular Vulnerabilities

The fourth *Sealed Plaintiff* factor inquires "whether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . particularly in light of his [or her] age." *Sealed Plaintiff*, 537 F.3d at 190. Magistrate Judge Stewart found that "[b]ecause Plaintiff was an adult when the alleged assault occurred" and presented no evidence that her age made her "'particularly vulnerable,'" this factor weighs against anonymity. (Dkt. No. 63, at 8 (quoting *Skyline Autos. Inc.*, 375 F. Supp. 3d at 406).

Plaintiff argues that the Order "erroneously holds that it is required to conduct an analysis using Ms. Doe's age," and "[i]t is unreasonable to hold that because Plaintiff was 37 years old when she was raped that this fact *weighs against* her Motion." (Dkt. No. 71, at 19 (emphasis in original)).[8]

In general, "courts have been readier to protect the privacy of infant plaintiffs than of adults, whether because children are conceived as more vulnerable or because the child whose privacy is at stake has not chosen for himself or herself to pursue the litigation." *Del Rio*, 241 F.R.D. at 158 (citations omitted); *see also Doe v. United States*, No. 24-cv-1071, 2024 WL 3738626, at *3, 2024 U.S. Dist. LEXIS 141598, at *8–9 (S.D.N.Y. Aug. 8, 2024) (noting the same). Given the prevailing view that children warrant special protection due to their age, courts

---

[8] Plaintiff argues that the Order erred in stating that the "fourth factor **requires courts to determine** whether the plaintiff is particularly vulnerable to the possible harms of disclosure . . . particularly in light of [her] age[,]" because the Second Circuit "has not mandated that a court is 'required' to use a single one of the ten factors it listed in *Sealed Plaintiff*." (Dkt. No. 71, at 19 (emphasis in original) (citing Dkt. No. 63, at 8)). The Court finds no error in Magistrate Judge Stewart's consideration of factor four. While the Second Circuit has not mandated that courts must analyze all factors, courts frequently consider whether a plaintiff has shown a particular vulnerability that would warrant assigning more weight to that plaintiff's privacy interest. *Sealed Plaintiff*, 537 F.3d at 190.

in this Circuit generally weigh an adult plaintiff's age against anonymity, unless a particular

vulnerability is alleged. *See Gooding*, 2022 WL 1104750, at *6, 2022 U.S. Dist. LEXIS 68607,

at *16–17; *Hobart & William Smith Colls.*, 2021 WL 1062707, at *3, 2021 U.S. Dist. LEXIS

52371, at *8 (weighing factor four against an adult plaintiff proceeding anonymously, even when

deeming other factors neutral); *cf. Nygard*, 2020 WL 4890427, at *3, 2020 U.S. Dist. LEXIS

151186, at *7 (granting anonymity, noting, *inter alia*, the plaintiffs' age as minors at the time of

the alleged attack, and the fact that one was still a minor at the time of litigation, "further

amplifying his right to privacy").

To the extent Plaintiff argues that a factor that is irrelevant or inapplicable may be

omitted from the analysis, she provides no legal authority for this proposition. Plaintiff has the

burden to rebut the presumption of public disclosure, and courts regularly consider each factor,

including the fourth factor in analyzing motions to proceed by pseudonym—even when they are

inapplicable to the facts. *See*, *e.g.*, *Leonelli*, 2022 WL 2003635, at *3, 2022 U.S. Dist. LEXIS

100895, at *10 (noting the plaintiffs' argument that "factor three is 'not relevant or not

persuasive' in this case," construing the argument as conceding "that there are no other harms to

consider," and finding that "[t]he absence of any other potential harms weighs against

proceeding pseudonymously"); *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 406 (finding no

evidence that the plaintiff's "age makes her particularly vulnerable to the possible harms of

disclosure" and concluding "the fourth factor does not support Plaintiff's request to proceed

anonymously").[9]

---

[9] Plaintiff also argues that the reasoning in Magistrate Judge Stewart's analysis of factor four is "wrong" because it relies on *Rapp*, 537 F. Supp 3d 521, which is "inapposite." (Dkt. No. 71, at 20). However, Magistrate Judge Stewart did not rely on *Rapp* as a factually analogous case, but instead to explain the fourth factor. (*See* Dkt. No. 63, at 8 ("Age is a critical factor in making this determination because 'courts have been readier to protect the privacy interest of minors in legal proceedings than of adults.' Consequently, '[i]f a plaintiff is not a child, this factor weighs against a

As in factor three, having failed to present evidence of the fourth factor, it does not weigh in Plaintiff's favor and the Court finds no clear error or error of law in Magistrate Judge Stewart's analysis.

### 5.    Government or Private Parties

The fifth *Sealed Plaintiff* factor inquires "whether the suit is challenging the actions of the government or that of private parties." *Sealed Plaintiff*, 537 F.3d at 190. Magistrate Judge Stewart found this factor weighs against anonymity as Defendant "is clearly a private party." (Dkt. No. 63, at 8–9).

Plaintiff did not challenge the fifth factor in her initial brief on appeal. However, in her reply brief, Plaintiff argues that Magistrate Judge Stewart erred in weighing the fifth factor against her because "[w]here defendants are governmental entities, such a fact can weigh in favor of anonymity but the reverse is not true." (Dkt. No. 79, at 8). Plaintiff further argues that where defendants are private parties, the court is "not even require[d] . . . to consider the fifth factor." (*Id.* (citing *Doe v. Daedone*, No. 24-cv-4434, 2024 WL 3897078, at *5, 2024 U.S. Dist. LEXIS 150750, at *11–12 (E.D.N.Y. Aug. 22, 2024)).

As an initial matter, "[t]he law in the Second Circuit is clear that arguments or requests for relief raised for the first time in reply briefs need not be considered." *Gonzales v. Agway Energy Servs.*, LLC, No. 18-cv-235, 2019 WL 910669, at *2, 2019 U.S. Dist. LEXIS 28922, at *6 (N.D.N.Y. Feb. 25, 2019) (citing *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007)); *see also Meyer v. Seidel*, 89 F.4th 117, 128 (2d Cir. 2023) ("[A]n issue raised for the first time only in a reply brief has been waived.") (citing *Norton*

---

finding for anonymity." (internal citations omitted) (quoting *Rapp*, 537 F. Supp. 3d at 530)). Thus, Plaintiff's argument is without merit.

*v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)). Even if Plaintiff's arguments were properly raised, they are without merit. Indeed, *Daedone*, the case Plaintiff relies on, does not support her argument. In *Daedone*, while the court considered the first, sixth, eighth, and tenth factors to be the "most relevant" and did not reference the fifth factor, it is merely an example of a case where the analysis did not expressly address each of the ten factors. *Daedone*, 2024 WL 3897078, at *5, 2024 U.S. Dist. LEXIS 150750, at *11–12. *Daedone* nowhere states or implies that a court is "not even require[d] . . . to consider the fifth factor." (Dkt. No. 79, at 8). Thus, *Daedone* does not support Plaintiff's argument.

    Further, the Court finds no error in Magistrate Judge Stewart's consideration of this factor. As the court in *Del Rio* explained, the "factors function in different ways." 241 F.R.D. at 158. While "[s]everal of them constitute specific aspects of a plaintiff's potential privacy interests," "[o]ther listed factors," including whether a suit is against the government or a private party, "go more to the weight of the countervailing interest in open judicial proceedings." *Id.*

    Moreover, as Magistrate Judge Stewart correctly explained, while a suit "against the government 'involve[s] no injury to the Government's reputation,'" a suit against a private party may cause damage to the good name and reputation of a private party. (Dkt. No. 63, at 8 (quoting *N. Jersey Media Grp. Inc. v. Doe Nos. 1–5*, 12-cv-6152, 2012 WL 5899331, at *7, 2012 U.S. Dist. LEXIS 167317, at *20 (S.D.N.Y. Nov. 26, 2012)). For this reason, "courts are less inclined to allow Plaintiffs to proceed anonymously in actions brought against private parties." (*Id.* (citing *N. Jersey Media Grp.*, 2012 WL 5899331, at *7, 2012 U.S. Dist. LEXIS 167317, at *20)). "[W]hether the defendants are governmental entities is significant because a challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual." *Doe No. 2 v. Kolko*, 242 F.R.D.

193, 195 (E.D.N.Y. 2006). Accordingly, "courts recognize there is a significant interest in open judicial proceedings" where, as here, an action involves only private parties. *Leonelli*, 2022 WL 2003635, at *4, 2022 U.S. Dist. LEXIS 100895, at *11 (quoting *Rapp*, 537 F. Supp 3d at 532). There was, therefore, no error in Magistrate Judge Stewart's consideration of the fifth factor.

### 6.    Prejudice to Defendant

The sixth *Sealed Plaintiff* factor inquires "whether the defendant is prejudiced by allowing the plaintiff to press h[er] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. Here, Magistrate Judge Stewart found that given the "highly sensitive and personal nature" of Plaintiff's allegations, "the potential for harm flow[ed]" to both Plaintiff and Defendant as a result of those allegations and noted Defendant's assertion that "he has already suffered grave reputational damage because of this lawsuit" and will continue to be prejudiced if Plaintiff is "permitted to proceed anonymously." (Dkt. No. 63, at 10–11). Magistrate Judge Stewart also found, noting the issue of Plaintiff's credibility, (*id.* at 11 (observing that Plaintiff, "who has levie[d] serious allegations[,] put [her] credibility in issue when she commenced this action") (quotation marks omitted)), that allowing Plaintiff to proceed anonymously would disadvantage Defendants at "all stages of litigation," (*id.*). In particular, Magistrate Judge Stewart noted "the impact on discovery, including that possibility that "keeping Plaintiff's name confidential could . . . prevent[] witnesses from coming forward" and hinder Defendants' ability to "obtain witnesses and witness testimony," the difficulty Defendants may have at trial in "fully and adequately cross-examin[ing] the Plaintiff," and the reduction in Defendants' leverage in settlement negotiations if Plaintiff remained anonymous. (*Id.*).

Plaintiff contends that Magistrate Judge Stewart "incorrectly relie[d]" on *Anonymous v. Simon*, No. 13-cv-2927, 2014 WL 819122, at *2, 2014 U.S. Dist. LEXIS 27563, at *5 (S.D.N.Y. Feb. 25, 2015), in finding that "where, as here, the allegations are of a highly sensitive and personal nature, the potential for harm flows not only to Plaintiff but to Defendant Moralez as well." (Dkt. No. 63, at 10–11 (citing *Simon*, 2014 WL 819122, at *2, 2014 U.S. Dist. LEXIS 27563, at *5)). Specifically, Plaintiff argues that there is no comparison between the alleged harm to Defendant in this case and the harm to the defendant in *Simon*, whom the plaintiff identified not only in her lawsuit but in an interview with the New York Post in connection with her allegation that the defendant knowingly exposed her to a sexually transmitted disease. *Simon*, 2014 WL 819122, at *2, 2014 U.S. Dist. LEXIS 27563, at *5. However, Magistrate Judge Stewart does not appear to have relied on *Simon* as factually analogous, but instead for the principle that when allegations are of a "highly sensitive and personal nature," as they are here, courts have recognized that it is the nature of the allegations, which pose a risk of harm by exposing intimate information about both parties, one of whom is named publicly, while the other is allowed to remain anonymous and protected. *See Townes*, 2020 WL 2395159, at *5, 2020 U.S. Dist. LEXIS 83550, at *16 ("Due to the nature of the allegations, which are graphic and serious, the reputational damage risk to Defendant is high and '[f]airness requires that [plaintiff] be prepared to stand behind her charges publicly' because plaintiff 'has made serious charges.'" (quoting *Shakur*, 164 F.R.D. at 361)); *Doe v. McLellan*, No. 20-cv-5997, 2020 WL 7321377, at *3, 2020 U.S. Dist. LEXIS 232551, at *7 (E.D.N.Y. Dec. 10, 2020) (finding prejudice to the defendant in lawsuit by anonymous plaintiff alleging sexual assault and other torts, observing that "[c]ourts have identified prejudice against a defendant when a defendant is 'required to defend itself publicly before a jury while plaintiff could make her accusations from

behind a cloak of anonymity'" (quoting *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 225 (S.D.N.Y. 2015)). Moreover, Plaintiff fails to cite case law showing that the exposure of a lawsuit is an insufficient basis on which to find a reputational damage risk to a defendant.

Plaintiff next argues that Magistrate Judge Stewart erred in finding that her anonymity would disadvantage Defendants with respect "to locat[ing] and speak[ing] to potential witnesses." (Dkt. No. 71, at 21–22). Plaintiff asserts that Magistrate Judge Stewart overlooked the evidence that during the Title IX investigation, eight witnesses (in addition to Plaintiff and Defendant) were interviewed and "both Plaintiff and Defendant Moralez were subjected to several rounds of questioning by investigators who obtained the names of all potential witnesses to the events." (*Id.* at 22). Defendant responds that discovery should not be "limited to the documents and witnesses already disclosed during the Title IX investigation" and there "may be unknown witnesses, whose testimony would be probative on Plaintiff's credibility who will remain unknown if Plaintiff is able to litigate anonymously." (Dkt. No. 78, at 22).

The Court finds no error in Magistrate Judge Stewart's finding that Plaintiff's anonymity may prejudice Defendants during the discovery process. Plaintiff is correct insofar as the parties in this case are not starting from ground zero with respect to discovery—the Title IX investigation may be a useful resource from which the parties can draw to identify witnesses or useful documents. However, Plaintiff's assertion that all potential witnesses were identified through the Title IX process is unsupported and Plaintiff does not dispute Defendants' entitlement to discovery in the present case, which, in addition to a Title VII and Title IX claims, includes Plaintiff's claims of sexual assault and sexual battery, and Defendant's counterclaims under New York law. (Dkt. Nos. 1, 12).

Further, Plaintiff's argument that Defendant has little to gain from discovery given the disclosures made during the Title IX investigation is belied by her claims in this action that SLU's investigation was deficient. (*See generally* Dkt. No. 1). In her Complaint, Plaintiff asserts that "[k]ey witnesses were not interviewed by SLU[,]" (*id.* ¶ 229), and it "was nothing short of a biased, deficient and sham investigation" (*id.* ¶ 232).

Nor was it error for Magistrate Judge Stewart to consider the effect of Plaintiff's anonymity on settlement negotiations. (Dkt. No. 63, at 11). Courts have observed that "[w]hile a publicly accused defendant might be eager to settle in order to get its name out of the public eye, a pseudonymous plaintiff might hold out for a larger settlement because they face no such reputational risk." *Doe v. Fedcap Rehab Servs.*, No. 17-cv-8220, 2018 WL 2021588, at *2–3, 2018 U.S. Dist. LEXIS 71174, at *5, 8 (S.D.N.Y. Apr. 27, 2018) (finding that "[a]llowing Plaintiff to proceed anonymously would put Defendants at a genuine disadvantage, particularly when it comes to settlement leverage").

Lastly, Plaintiff asserts that Magistrate Judge Stewart placed "undue weight on how Defendant Moralez would be prejudiced in the event the action reaches a jury many months in the future," and that consideration of "Defendant's right to publicly confront an accuser" is inappropriate at this stage of the litigation. (Dkt. No. 71, at 23 (citing Dkt. No. 63, at 9–10)). Plaintiff is correct that courts may make, and revisit, an anonymity determination at any time during the litigation, including immediately prior to trial. *See*, *e.g.*, *Kolko*, 242 F.R.D. at 198 (granting the plaintiff's motion to proceed anonymously through "the discovery period" but indicating that anonymity may "be reconsidered" if case went to trial). But even if it would be premature, at this stage, to consider the potential prejudice before a jury, Magistrate Judge Stewart also found the prejudice to Defendant in litigating this case at the present stage, and

through discovery, weighed against Plaintiff proceeding anonymously. Thus, Plaintiff's assertion

is without merit. Accordingly, the Court finds no error in Magistrate Judge Stewart's

consideration of the sixth factor.

### 7. Status of Confidentiality of Plaintiff's Identity

The seventh *Sealed Plaintiff* factor inquires "whether the plaintiff's identity has thus far

been kept confidential." *Sealed Plaintiff*, 537 F.3d at 190. Magistrate Judge Stewart found this

factor weighs against anonymity, noting that a Title IX investigation was conducted, that both

Defendants know Plaintiff's identity, and that Plaintiff "previously posted about the subject

assault on Facebook twice, privately messaged an individual about it, and passed out flyers about

the assault on SLU's campus." (Dkt. No. 63, at 6–7). Magistrate Judge Stewart further found

there was no evidence that these disclosures "caused Plaintiff additional trauma" or that Plaintiff

"received assurances of confidentiality from any of the people she disclosed information to." (*Id.*

at 7 (quotation marks omitted)).

Plaintiff raises a number of challenges to Magistrate Judge Stewart's consideration of the

confidentiality factor. First, Plaintiff argues that Magistrate Judge Stewart "improperly

categoriz[ed]" factor two (retaliatory or mental harm) with factor seven (whether confidentiality

has been maintained), gave too much weight to certain facts, and relied on flawed case law in his

analysis of factor seven. (Dkt. No. 71, at 15). There was no error in considering these factors

together. Where a plaintiff alleges that identification poses a risk of harm (factor two) but has

already revealed her identity to others (factor seven), courts consider whether the prior disclosure

manifested the alleged harm "or, if not, why further disclosure would yield a different outcome."

*Rapp*, 537 F. Supp. 3d at 529 ("[I]t would be no satisfactory answer to say that one should infer

that there was no 'retriggering' because [plaintiff] trusted, or assumed that he could trust, those

to whom he repeated his story not to reveal [his] identity"); *Leonelli*, 2022 WL 2003635, at *2–

3, 2022 U.S. Dist. LEXIS 100895, at *5–7; *Del Rio*, 241 F.R.D. at 158 & n.7 ("[T]he plaintiff's interest in anonymity is weaker where anonymity has already been compromised").

Second, Plaintiff argues that Magistrate Judge Stewart's analysis of the "status of . . . plaintiff's confidentiality thus far in the litigation," did not support Plaintiff's request for anonymity is erroneous because, in fact, her "identity has been kept confidential at all times during *this litigation*." (Dkt. No. 71, at 15 (emphasis added) (quoting Dkt. No. 63, at 6)). Although Plaintiff is correct that, in the Order, Magistrate Judge Stewart explained that "the seventh factor . . . 'inquires as to the status of a plaintiff's confidentiality thus far in the litigation,'" (Dkt. No. 63, at 6 (quoting *Skyline Autos. Inc.*, 375 F. Supp. 3d at 407), and that she has appeared anonymously in all submissions filed in this case, neither the confidentiality factor nor Magistrate Judge Stewart's findings are as narrow as Plaintiff claims. The language the Second Circuit used in *Sealed Plaintiff* regarding this factor—"whether the plaintiff's identity has thus far been kept confidential"— suggests courts should consider the status of the plaintiff's anonymity beginning from the incident at issue to the present; it does not refer to "litigation." 537 F.3d at 190 (citing *Del Rio*, 241 F.R.D. at 157). In *Del Rio*, which the Second Circuit cited in support of the seventh factor, the court explained that "the extent to which" a plaintiff has maintained anonymity impacts the weight of the plaintiff's privacy interests and that "a plaintiff's interest in anonymity is weaker where anonymity has already been compromised." 241 F.R.D. at 158. Plaintiff cites no caselaw suggesting that a plaintiff's disclosure of her identity outside the litigation context is irrelevant. Moreover, courts regularly find such disclosures relevant to the weight of a plaintiff's privacy interests. *Doe v. Berg*, No. 15-cv-9787, 2016 WL 11597923, at *3, 2016 U.S. Dist. LEXIS 198309, at *7 (S.D.N.Y. Feb. 10, 2016) (finding seventh factor weakened privacy interest, noting that the plaintiff's "identity has *not*

been kept confidential—the *New York Post* has already revealed her name and reported on her relationship with Defendant in a related state action"); *see also Doe v. Telemundo Network Grp. LLC*, No. 22-cv-7665, 2023 WL 6259390, at *6, 2023 U.S. Dist. LEXIS 171520, at *20 (S.D.N.Y. Sept. 26, 2023) ("It does not matter whether she herself spilled the beans, or if members of the public were able to put the pieces of the puzzle together themselves. All that matters for the seventh *Sealed Plaintiffs* factor is that Plaintiff's identity is no longer confidential."). Thus, this argument is without merit.

Third, Plaintiff asserts that Magistrate Judge Stewart factual finding that she "passed out flyers about the assault on SLU's campus" was erroneous. (Dkt. No. 71, at 25). In a declaration in opposition to Plaintiff's original motion, Defendant asserted that Plaintiff or her counsel distributed flyers on campus and attached a copy of the flyer in question. (Dkt. No. 60, ¶ 12; Dkt. No. 60-8, at 2). It states: "'Hold SLU accountable' in bold red letters followed by 'Stop SLU from protecting predators. Stop SLU from endorsing sexual assault. Protect students and faculty' with a QR Code and a link to the Complaint listed on Plaintiff's counsel's website (and a 'trigger warning' 'SA statement from SLU employee.'" (*Id.* ¶ 13). Plaintiff did not dispute Defendant's assertion before Magistrate Judge Stewart or seek to file a reply. However, on appeal, Plaintiff filed a declaration stating: "I have never handed out flyers on campus, much less about my own rape experience," that "[u]ntil it was filed" in this case, "she had never before seen" the flyer, and that she has "no knowledge as to who created the flyer, when it was created or who was involved in passing it out." (Dkt. No. 72, ¶¶ 33–35). Plaintiff's attorney likewise filed an affidavit on appeal denying knowledge of the flyer; she stated that no one at her law firm "created" or "distributed" the flyer and that she "does not know when or by whom this document was created." (Dkt. No. 73, ¶¶ 7–9). Plaintiff offers no explanation for failing to address the flyer

while her motion was pending before Magistrate Judge Stewart. Thus, for all the reasons
discussed above, the Court declines to consider this new evidence.

Perhaps anticipating this Court's rejection of the new evidence, Plaintiff also argues that
Magistrate Judge Stewart erred in crediting Defendant's statements regarding the flyer because
the unreliability of Defendant's statements should have been obvious:

> The Court opted to credit everything Defendant Moralez said as the
> truth, even without a single fact explaining the document's creation,
> when it is common knowledge that any person can go online and
> copy a website URL to create a QR code. . . . Blind acceptance of
> Exhibit D, to Ms. Doe's clear detriment, was error, especially given
> that Moralez's lack of supporting proof is blatant. Further, a quick
> Google search about the complaint in this action reveals that a
> number of SLU student-based organizations engaged in questioning
> the administration about its efforts to prevent sexual assaults on
> campus. It also shows that SLU publications reported on this action.

(Dkt. No. 71, at 26–27). Magistrate Judge Stewart referenced the flyer once in the Order, in
connection with Plaintiff's Facebook disclosures: "The record clearly shows that Plaintiff
previously posted about the subject assault on Facebook twice, privately messaged an individual
student about it, and passed out flyers about the assault on SLU's campus." (Dkt. No. 63, at 7).
The Court therefore finds no factual error: the record before Magistrate Judge Stewart reflected
these facts without dispute. (Dkt. Nos. 60-5, 60-6 , 60-7, 60-8; *see also* Dkt. No. 46, ¶¶ 45
(Plaintiff admitting she posted the photo on Facebook), 57 (Plaintiff admitting she sent the two
messages)). Further, it is not within the province of the Court to research the facts of an action
before it. *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 357 (2006) ("What makes a system
adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor
does) conduct the factual and legal investigation him[ or herself], but instead decides on the basis
of facts and arguments pro and con adduced by the parties. . .") (citation and internal quotation
marks omitted); *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) ("[A]s a general

rule, our system is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.") (citation and internal quotation marks omitted). Thus, Plaintiff's argument is without merit.

Fourth, Plaintiff argues that her participation in the Title IX administrative proceeding should not be used against her. (Dkt. No. 71, at 17). In weighing the alleged risk of harm from disclosure, Magistrate Judge Stewart observed that Defendants were aware of Plaintiff's identify throughout the Title IX investigation. (Dkt. No. 63, at 7 ("Here, Plaintiff concedes that a Title IX investigation was conducted, and Defendants know Plaintiff's identity.")). Plaintiff does not dispute the factual correctness of this statement but argues that it is irrelevant that Defendants know her identity and asserts that "[t]he issue is whether the **public** already knew her identity." (Dkt. No. 71, at 16 (emphasis in original)). Indeed, courts have also distinguished between knowledge of a plaintiff's identity by the accused and the university (or those involved in the internal investigatory process) and "full disclosure . . . through the publicly-searchable presence of a lawsuit." *Doe v. Univ. of Vermont*, No. 22-cv-144, 2022 WL 17811359, at *3, 2022 U.S. Dist. LEXIS 227691, at *9 (D. Vt. Dec. 19, 2022) (quoting *Hobart & William Smith Colls.*, 20-cv-6338, 2021 WL 1062707, at *3, 2021 U.S. Dist. LEXIS 52371, at *9 (W.D.N.Y. Mar. 19, 2021). In any event, the Court assumes that the disclosure of Plaintiff's identity during the Title IX process "does not tip [the confidentiality factor] in either party's favor." *Hobart & William Smith Colls.*, 2021 WL 1062707, at *3, 2021 U.S. Dist. LEXIS 52371, at *9.

Fifth, Plaintiff argues that Magistrate Judge Stewart erred in relying on *Rapp* and *Simon* in finding that her "private" social media posts "to a limited number of people she knew" and the two private messages she sent undercut her position to seek anonymity in this case. (Dkt. No. 71,

at 21, 24–25). Plaintiff further asserts, for the first time in her declaration on appeal, that she "removed these posts shortly thereafter and then permanently deleted her Facebook account." (Dkt. No. 71, at 21 (citing Dkt. No. 72, ¶¶ 20, 29)). Plaintiff also faults Magistrate Judge Stewart for relying on *Rapp*, 537 F. Supp. 3d 521, in support of his conclusion that Plaintiff's social media disclosures warranted finding that this factor should weigh against her. (Dkt. No. 71, at 21).

In *Rapp*, the court found the plaintiff's prior actions, including his interview with an online magazine about an alleged sexual assault by the defendant (a celebrity), "undercut his position" because he "repeatedly took the risk that" his identity would be revealed "in a manner that would bring that identity to wide public attention." 537 F. Supp. 3d at 529; *see also id.* (noting that although the plaintiff was not identified in the article, he disclosed his identity to the magazine). Plaintiff argues that unlike *Rapp*, she has never spoken a media outlet, the individual defendant in this case is not a celebrity, and social media posts reaching, respectively, 20 and 14 people, "cannot be considered the same as the" article in *Rapp* that was "disseminated to 18 million users." (Dkt. No. 71, at 21). But Magistrate Judge Stewart did not analogize the facts in *Rapp* to those in this case; Magistrate Judge Stewart relied on *Rapp* for its identification of the type of evidence that may be relevant to the confidentiality analysis, including whether there was evidence that Plaintiff's "prior actions undercut her position," whether prior disclosures "caused additional trauma," and whether she "received assurances of confidentiality" from "the people she disclosed information to." (Dkt. No. 63, at 7 (citing *Rapp*, 537 F. Supp. 3d at 529)). This is relevant to the confidentiality analysis even though it does not involve a mass publication or a celebrity, *see*, *e.g.*, *Leonelli*, 2022 WL 2003635, at *2, 2022 U.S. Dist. LEXIS 100895, at *6 (finding seventh factor weighed against pseudonym where there was evidence that the plaintiffs

had "reported the abuse to the Catholic authorities," including the individual defendant's supervisor, the parties had "been in communication . . . about the allegations" and there was no evidence of "any promises of confidentiality").

The Court therefore agrees that Plaintiff's social media activity undercuts her claim that disclosure of her identity will cause her harm. Plaintiff does not allege to have suffered any additional trauma as a result of her two Facebook posts detailing the alleged rape by "a colleague" or any other disclosure. Although Plaintiff maintains few people actually saw the posts and the messages, she does not contend that she requested confidentiality in connection with the posts or messages. In addition, the messages identified Defendant by name, and the distribution of the posts and messages went beyond Plaintiff's Facebook "Friends" and the intended recipients and were shared with others, including Defendant. (Dkt. No. 60, ¶¶ 4, 10; Dkt. No. 60-7).[10] The Court therefore concludes, as did Magistrate Judge Stewart, that factor seven weighs against Plaintiff.

Finally, even considering Plaintiff's new evidence—that the flyer posted around the SLU campus is in no way attributable to her or to the law firm representing her—Plaintiff's prior disclosures of her identity in connection with the allegations at issue by posting about it on social media and sending private messages to individuals she did not know would nonetheless warrant a finding that the seventh factor weighs against Plaintiff's motion to proceed by pseudonym.

### 8.    Public Interest in Disclosure of Plaintiff's Identity

The eighth *Sealed Plaintiff* factor inquires "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose h[er] identity." *Sealed Plaintiff*, 537 F.3d at 190.

---

[10] Nor does the Court find that Plaintiff's argument that her Facebook posts were not public but were "Friends Only" postings provides any basis for concluding Magistrate Judge Stewart erred in considering factor seven; it is undisputed that Plaintiff did not maintain the confidentiality of her identity.

While Magistrate Judge Stewart agreed that there "is certainly a public interest" "in protecting the identities of sexual assault victims so that others will not be deterred from reporting similar crimes," he also noted that there was also public interest "in the accused being able to publicly confront an accuser," and "in knowing the underlying facts of a litigation, including the identities of litigants." (Dkt. No. 63, at 9). Thus, Magistrate Judge Stewart found this factor weighs against anonymity. (*Id.*).

There is a "general presumption that parties' identities are public information." *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *9, 2018 U.S. Dist. LEXIS 154899, at *24 (citing *A.B. v. Hofstra Univ.*, No. 17-cv-5562, 2018 WL 1935986, at *3, 2018 U.S. Dist. LEXIS 68918, at *7 (E.D.N.Y. Apr. 24, 2018)). "Lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties." *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (Chin, J.) (citation omitted); *see also Sealed Plaintiff*, 537 F. Supp. 3d at 189 ("The people have a right to know who is using their courts.") (citation and internal quotation marks omitted). Plaintiff bears the burden of showing that her private interest in anonymity overcomes the presumption of disclosure of her identity. *Doe #1 v. Syracuse Univ.*, 2018 WL 7079489, at *9, 2018 U.S. Dist. LEXIS 154899, at *24.

"The public has countervailing considerations [in cases such as here]: it must deter sexual assault through open proceedings, while at the same time 'protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'" *Gooding*, 2022 WL 1104750, at *6, 2022 U.S. Dist. LEXIS 68607, at *16 (quoting *Kolko*, 242 F.R.D. at 196); *see also Nygard*, 2020 WL 4890427, at *3, 2020 U.S. Dist. LEXIS 151186, at *7 (noting the public interest in protecting identities of sexual assault victims was "only stronger given the sprawling allegations of widespread sexual abuse levied against [defendant] in related

proceedings"); *cf. Rapp*, 537 F. Supp. 3d at 533 ("Though . . . the public generally has an interest in protecting those who make sexual assault allegations so that they are not deterred from vindicating their rights, it does not follow that the public has an interest in maintaining the anonymity of *every* person who alleges sexual assault . . .") (emphasis in original) (citation omitted).

Plaintiff argues that the "public is not better served or protected by knowing Plaintiff's true identity," and "it is a greater public concern that sexual assault victims are encouraged to report such crimes." (Dkt. No. 71, at 22 (citation omitted)). However, as observed by Magistrate Judge Stewart, although there "is certainly a public interest" "in protecting the identities of sexual assault victims so that others will not be deterred from reporting similar crimes[,]" "this interest alone has been 'repeatedly rejected . . . as an adequate basis by itself to warrant anonymity.'" (Dkt. No. 63, at 9 (first quoting *Telemundo Network Grp. LLC*, 2023 WL 6259390, at *7, 2023 U.S. Dist. LEXIS 171520, at *22, and then citing *Leonelli*, 2022 WL 2003635, at *4, 2022 U.S. Dist. LEXIS 100895, at *12–13, *Rapp*, 537 F. Supp. 3d at 532–33, and *Weinstein*, 484 F. Supp. 3d at 98))).

Plaintiff also contends that it was error to "deny the Motion at this juncture, on the basis that anonymity will deny Defendant Moralez's 'right to confront an accuser,' when the litigants are nowhere near trial." (Dkt. No. 71, at 23 (citing Dkt. No. 63, at 9)). While it may be premature to consider Defendant's right to confront an accuser at this stage in the litigation, Magistrate Judge Stewart did not deny Plaintiff's Motion on the basis of this, or any, factor alone. (*See generally* Dkt. No. 63). Thus, the Court finds no error in weighing factor eight.

### 9.    Nature of Issues Presented as Related to the Public Interest

The ninth *Sealed Plaintiff* factor inquires "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the

litigants' identities." *Sealed Plaintiff*, 537 F.3d at 190. Magistrate Judge Stewart found this factor weighs against anonymity as "[t]his action does not involve a purely legal issue" but rather allegations that "are factual in nature." (Dkt. No. 63, at 10).

Plaintiff argues that the Order "reduces her allegations about being anally raped and forced to perform oral sex against her will as a mere dispute over 'social norms.'" (Dkt. No. 71, at 22 (citing Dkt. No. 63, at 10)). In distinguishing this action from one that involves a purely legal issue, Magistrate Judge Stewart explained that Plaintiff's allegations of sexual assault and sexual harassment "are of the type that further the public's interest in enforcing legal and social norms." (Dkt. No. 63, at 10 (quoting *N. Jersey Media Grp. Inc.*, 2012 WL 5899331, at *8, 2012 U.S. Dist. LEXIS 167317, at *25). This explanation accurately reflects how courts generally view this factor:

> "[W]here a lawsuit is brought solely against the government and seeks to raise an abstract question of law that affects many similarly situated individuals, the identities of the particular parties bringing the suit may be largely irrelevant to the public concern with the nature of the process." On the other hand, "[p]rivate civil suits, individually and certainly in the aggregate, do not only advance the parties' private interests, but also further the public's interest in enforcing legal and social norms"; thus, where the litigation involves, not "abstract challenges to public policies[,] but rather . . . particular actions and incidents, open proceedings nevertheless benefit the public as well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication."

*N. Jersey Media Grp. Inc.*, 2012 WL 5899331, at *8, 2012 U.S. Dist. LEXIS 167317, at *25 (quoting *Del Rio*, 241 F.R.D. at 158); *see also Leonelli*, 2022 WL 2003635, at *4, 2022 U.S. Dist. LEXIS 100895, at *11 ("Where, as here, the 'allegations are decidedly factual in nature,' . . . the public's interest is not 'atypically weak' but strong") (citation omitted).

As this case presents issues of fact regarding particular actions and incidents of private parties, and those of a private university, the public interest in an open proceeding is heightened.

*Cf. Smith*, 2019 WL 6337305, at *2, 2019 U.S. Dist. LEXIS 205707, at *6 (noting "unlike other lawsuits involving campus sexual assault, the college is not a party to this particular litigation, and so matters that may be of greater public interest, for example, how colleges handle such cases, will not be at issue"). Moreover, the claims here implicate an increasingly significant societal concern—the prevention of sexual assault and sexual harassment and the accountability of those who commit such offenses. *See McLellan*, 2020 WL 7321377, at *4, 2020 U.S. Dist. LEXIS 232551, at *10 (finding the "public interest in sexual assault is very high"); *Skyline Autos. Inc.*, 375 F. Supp. 3d at 408 (same). There was no error in Magistrate Judge Stewart's analysis of factor nine.

### 10.    Alternative Mechanisms for Protecting Plaintiff's Confidentiality

The tenth *Sealed Plaintiff* factor inquires "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff." *Sealed Plaintiff*, 537 F.3d at 190. Courts have considered whether mechanisms like "sealing, redaction of documents, protective orders and confidentiality agreements . . . could protect the plaintiff's confidentiality." *Doe v. Combs*, No. 23-cv-10628, 2024 WL 863705, at *5, 2024 U.S. Dist. LEXIS 35495, at *15–16 (S.D.N.Y. Feb 29, 2024). Observing that "the parties have already entered into a Confidentiality Stipulation and Protective Order," providing an alternative protection to Plaintiff, Magistrate Judge Stewart found this factor weighs against anonymity. (Dkt. No. 63, at 12 (citing Dkt. No. 58)).

Plaintiff argues, for the first time in her reply brief on appeal, that Magistrate Judge Stewart "incorrectly weighed factor ten against Plaintiff[]" because the Confidentiality Stipulation and Protective Order "would not protect Plaintiff if the public had access to her identity on the public docket." (Dkt. No. 79, at 12). As was the case with factor five, "arguments or requests for relief raised for the first time in reply briefs need not be considered." *Gonzales*, 2019 WL 910669, at *2, 2019 U.S. Dist. LEXIS 28922, at *6 (citing *ABN Amro Verzekeringen*

*BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 100 n.16 (2d Cir. 2007). Even if the Court were to consider Plaintiff's argument, it would not yield a different result. While the protective order will not protect the public disclosure of Plaintiff's identity on the public docket, it may "provide some protection over disclosure of sensitive information exchanged during discovery." *Comb*, 2024 WL 863705, at *5 (finding existence of a protective order "weighs minimally in favor of disclosure"); *see also McLellan*, 2020 WL 7321377, at *4, 2020 U.S. Dist. LEXIS 232551, at *10 ("There are multiple other ways a plaintiff's interests can be protected, including the redaction of documents and sealing . . . seek[ing] a protective order, or . . . enter[ing] a confidentiality agreement.") (citation omitted); *Skyline Autos. Inc.*, 375 F. Supp. 3d at 408 (same). Thus, the Court finds no error in Magistrate Judge Stewart's analysis of factor ten.

### C.    Balancing the Sealed Plaintiff Factors

Plaintiff contends that Magistrate Judge Stewart erred in his overall application of the *Sealed Plaintiff* framework by analyzing all ten factors. (Dkt. No. 71, at 8 & n.4). Ever since *Sealed Plaintiff* was decided, as Plaintiff concedes, (Dkt. No. 79, at 5), courts in this Circuit have approached the ten-factor balancing test in various ways. Some have done so the same as Magistrate Judge Stewart, assessing all factors, *see*, *e.g.*, *Rapp*, 537 F. Supp. 3d at 528, some weigh only the factors they find relevant, *see*, *e.g.*, *Doe v. New York Univ.*, 537 F. Supp. 3d 483, 496–97 (S.D.N.Y. 2021), and some categorize certain factors as neutral rather than weighing one way or another, *see*, *e.g.*, *Hobart & William Smith Colls.*, 2021 WL 1062707 at *3, 2021 U.S. Dist. LEXIS 52371, at *9. Here, there was no error in Magistrate Judge Stewart's analysis. Plaintiff flags the sentence in the Order stating that "courts must consider the following factors on balance[,]" as evidence that Magistrate Judge Stewart "engaged in a mechanical test" rather than the requisite examination of the factors relevant to this particular case. (Dkt. No. 71, at 8 (quoting Dkt. No. 63, at 3)). But, as discussed herein, Magistrate Judge Stewart's recitation of

the legal standards and analysis shows application of the correct legal standard and careful attention to the facts of this case. Indeed, Magistrate Judge Stewart expressly recognized, that "[c]ourts are 'not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." (*Id.* at 4). Further, as Defendant raised an issue with respect to each of the ten *Sealed Plaintiff* factors in his response to Plaintiff's motion, (*see generally* Dkt. No. 61), each factor was squarely before the Court.

In addition, the Court finds no error in Magistrate Judge Stewart's balancing of the Sealed Plaintiff factors. Specifically, Magistrate Judge Stewart appropriately found the highly sensitive and personal nature of Plaintiff's allegations in this case weighed heavily in favor of her application to proceed anonymously, but that Plaintiff's privacy interest was somewhat weakened by the previous compromises of her anonymity, and that, on balance, it was outweighed by the prejudice to Defendant Moralez and the potentially negative impact on his reputation, the prejudice to both Defendants in litigating this matter against a Plaintiff seeking to maintain anonymity, and the public's strong interest in open judicial proceedings. *See Sealed Plaintiff*, 537 F.3d at 189. As Magistrate Judge Stewart's Order accurately reflects a careful application of the facts to the applicable balancing test, the Court affirms the denial of Plaintiff's motion to proceed by pseudonym. Even if the Court were to consider the new evidence Plaintiff submitted on appeal, balancing all of the relevant factors, the Court finds that that Plaintiff has not shown that her interest in anonymity outweighs the public interest in disclosure and the potential prejudice to the Defendants, and that denial of her motion would still be warranted.[11]

---

[11] Because the Court has considered the new evidence Plaintiff submitted on appeal, her application to refile the motion is denied.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that: Plaintiff's appeal, (Dkt. Nos. 70–73), is **DENIED**; and it is further

**ORDERED** that Plaintiff's request for leave to refile the motion, (Dkt. No. 71, at 1 n.1), is **DENIED**; and it is further

**ORDERED** that Magistrate Judge Stewart's Order, (Dkt. Nos. 63, 64), is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff must file an amended complaint within fourteen (14) days from the date of this Order properly identifying herself, in compliance with Fed. R. Civ. P. 10(a), and to remove all references to "Jane Doe" throughout the complaint. If Plaintiff fails to file an amended complaint identifying herself within 14 days from the date of this Order, or to request an extension of time to do so, this action will be dismissed, without further order of the Court, for failure to comply with Rule 10(a).

**IT IS SO ORDERED.**

Dated: <u>February 6, 2025</u>
       Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge