**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **ERICA MORRELL,** | **Case No. 8:23-cv-00426-BKS-DJS** |
| **Plaintiff,** | |
| **v.** | **DEFENDANT ERNESTO MORALEZ' ANSWER TO PLAINTIFF MORRELL'S AMENDED COMPLAINT** |
| **ST. LAWRENCE UNIVERSITY, and ERNESTO MORALEZ, in his individual and professional capacity,** | |
| **Defendants.** | |

Defendant Ernesto Moralez ("Moralez" or "Defendant"), by and through his undersigned counsel answering the Amended Complaint (the "Amended Complaint") of Erica Morrell ("Plaintiff" or "Morrell"), respectfully states and alleges as follows:

1.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 1 of the Complaint.

2.     Denies the allegations contained in paragraph 2 of the Complaint, except admits that Moralez met with Morrell on April 12, 2022.

3.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 3 of the Complaint.

4.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 4 of the Complaint.

5.     Denies the allegations contained in paragraph 5 of the Complaint.

6.     Denies the allegations contained in paragraph 6 of the Complaint.

7.     Admits that at all relevant times Moralez was 43, lived alone, was never married, and had no children and further admits that the Parties ate Indian takeout Moralez had picked up

earlier and states that Morrell brought 8 beers to Moralez's residence and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 7 of the Complaint.

8.      Denies the allegations contained in paragraph 8 of the Complaint.

9.      Denies the allegations contained in paragraph 9 of the Complaint.

10.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 10 of the Complaint.

11.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 11 of the Complaint.

12.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 12 of the Complaint.

13.     Denies the allegations contained in paragraph 13 of the Complaint.

14.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 14 of the Complaint and specifically denies guiding Plaintiff anywhere.

15.     Denies the allegations contained in paragraph 15 of the Complaint and denies knowledge or information sufficient to form a belief as to the allegations regarding Morrell's subjective feelings.

16.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 16 of the Complaint.

17.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 17 of the Complaint, except admits that Morrell left a note at Moralez's residence.

18.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 18 of the Complaint.

19.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 19 of the Complaint.

20.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 20 of the Complaint.

21.     Admits that Moralez never claimed to have lost consciousness or was unable to physically move or formulate words that night and admits that he never alleged that he violently vomited and experienced diarrhea throughout the night, but denies that there was a "tragedy" and denies knowledge or information sufficient to form a belief as to the exact language Moralez used when describing his memory of the subject evening as set forth in the allegations contained in paragraph 21 of the Complaint.

22.     Denies the allegations contained in paragraph 22 of the Complaint.

23.     Denies the allegations contained in paragraph 23 of the Complaint.

24.     Denies the allegations contained in paragraph 24 of the Complaint.

25.     Denies the allegations contained in paragraph 25 of the Complaint.

26.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 26 of the Complaint.

27.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 27 of the Complaint.

28.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 28 of the Complaint.

29.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 29 of the Complaint.

30.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 30 of the Complaint.

31.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 31 of the Complaint.

32.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 32 of the Complaint.

33.     Denies the allegations contained in paragraph 33 of the Complaint.

34.     Admits that Moralez was the Co-Chair of the Public Health Department at SLU, but denies the remaining allegations contained in paragraph 34 of the Complaint.

35.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 35 of the Complaint.

36.     Denies the allegations contained in paragraph 36 of the Complaint.

37.     Denies the allegations contained in paragraph 37 of the Complaint.

38.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 38 of the Complaint.

39.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 39 of the Complaint.

40.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 40 of the Complaint.

41.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 41 of the Complaint.

42.     Admits the allegations contained in paragraph 42 of the Complaint, except denies any wrongdoing by Moralez.

43.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 43 of the Complaint.

44.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 44 of the Complaint.

45.     Admits that Defendant Ernesto Moralez was Co-Chair of Public Health and an assistant Professor at SLU who is a citizen of the United States and who resided in New York and denies the remaining allegations contained in paragraph 45 of the Complaint.

46.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 46 of the Complaint.

47.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 47 of the Complaint.

48.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 48 of the Complaint.

49.     Admits that in approximately October 2021 students gathered in the yard of SLU's president but denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 49 of the Complaint.

50.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 50 of the Complaint but admits that at some point, a "task force" was appointed.

51.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 51 of the Complaint.

52.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 52 of the Complaint.

53.     Denies the allegations contained in paragraph 53 of the Complaint.

54.     Denies the allegations contained in paragraph 54 of the Complaint, except admits that St. Lawrence hired Defendant Moralez.

55.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 55 of the Complaint.

56.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 56 of the Complaint.

57.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 57 of the Complaint.

58.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 58 of the Complaint.

59.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 59 of the Complaint.

60.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 60 of the Complaint.

61.     Denies the allegations contained in paragraph 61 of the Complaint as to Moralez.

62.     Denies the allegations contained in paragraph 62 of the Complaint as to Moralez and specifically denies any wrongdoing by Moralez and denies knowledge or information sufficient to form a belief as to the remaining allegations.

63.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 63 of the Complaint.

6

64.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 64 of the Complaint.

65.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 65 of the Complaint.

66.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 66 of the Complaint.

67.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 67 of the Complaint.

68.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 68 of the Complaint.

69.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 69 of the Complaint.

70.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 70 of the Complaint.

71.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 71 of the Complaint.

72.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 72 of the Complaint.

73.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 73 of the Complaint.

74.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 74 of the Complaint.

75.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 75 of the Complaint.

76.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 76 of the Complaint.

77.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 77 of the Complaint.

78.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 78 of the Complaint and specifically denies any wrongdoing by Moralez.

79.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 79 of the Complaint.

80.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 80 of the Complaint.

81.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 81 of the Complaint.

82.     Admits that in or around July 2020 St. Lawrence hired Moralez as an assistant professor in Public Health and denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 82 of the Complaint.

83.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 83 of the Complaint.

84.     Admits the allegations contained in paragraph 84 of the Complaint.

85.     Admits the allegations contained in paragraph 85 of the Complaint.

86.     Denies the allegations contained in paragraph 86 of the Complaint.

87.    Denies the allegations contained in paragraph 87 of the Complaint but admits that Moralez worked at Alma d' Arte Charter High School ("Alma d' Arte"), located in Las Cruces, New Mexico in and around 2005.

88.    Denies the allegations contained in paragraph 88 of the Complaint.

89.    Denies the allegations contained in paragraph 89 of the Complaint and states that the subject social media posts were false and defamatory.

90.    Denies the allegations contained in paragraph 90 of the Complaint and specifically denies any wrongdoing by Moralez.

91.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 91 of the Complaint.

92.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 92 of the Complaint.

93.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 93 of the Complaint.

94.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 94 of the Complaint.

95.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 95 of the Complaint.

96.    Admits the allegations contained in paragraph 96 of the Complaint.

97.    Admits that Moralez stated to NMSU that the allegations were false.

98.    Admits that Moralez was a victim of online harassment and identity theft and that Moralez had reported the same to law enforcement and denies that the same is "incredible."

99.     Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 99 of the Complaint.

100.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 100 of the Complaint.

101.    Denies that any students at NMSU made sexual harassment complaints against Moralez and denies knowledge or information sufficient to form a belief as to the balance of the allegations contained in paragraph 101 of the Complaint.

102.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 102 of the Complaint.

103.    Denies the allegations contained in paragraph 103 of the Complaint as to Moralez except admits that Moralez resigned from Alma d' Arte High School. Denies knowledge or information sufficient to form a belief as to what Gagnon told Francia.

104.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 104 of the Complaint.

105.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 105 of the Complaint.

106.    Denies the allegations contained in paragraph 106 of the Complaint.

107.    Denies the allegations contained in paragraph 107 of the Complaint.

108.    Admits that Moralez contacted the Canton, New York, police to report that he was the victim of the alleged online stalking but denies the remaining allegations contained in paragraph 108 of the Complaint.

109.    Denies the allegations contained in paragraph 109 of the Complaint and specifically states that the Twitter account referenced therein was unauthorized and not used by Moralez and that Moralez never posted the tweets quoted therein.

110.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 110 of the Complaint.

111.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 111 of the Complaint.

112.    Denies the allegations contained in paragraph 112 of the Complaint.

113.    Denies the allegations contained in paragraph 113 of the Complaint.

114.    Denies the allegations contained in paragraph 114 of the Complaint.

115.    Denies the allegations contained in paragraph 115 of the Complaint. Moralez was in fact stalked by his students.

116.    Denies the allegations contained in paragraph 116 of the Complaint and states that Ms. Morrell told Moralez she was having marriage problems.

117.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 117 of the Complaint.

118.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 118 of the Complaint.

119.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 119 of the Complaint.

120.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 120 of the Complaint.

121.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 121 of the Complaint.

122.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 122 of the Complaint.

123.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 123 of the Complaint.

124.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 124 of the Complaint.

125.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 125 of the Complaint, but admits that Morrell emailed Moralez on April 7, 2022 to schedule a meeting in person.

126.    Admits the allegations contained in paragraph 126 of the Complaint.

127.    Admits the allegations contained in paragraph 127 of the Complaint as to Moralez but denies knowledge or information sufficient to form a belief as to the remaining allegations.

128.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 128 of the Complaint but admits that as Co-Chair of Public Health Moralez participated in monthly meetings at SLU.

129.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 129 of the Complaint.

130.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 130 of the Complaint.

131.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 131 of the Complaint.

132.    Denies the allegations contained in paragraph 132 of the Complaint.

133.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 133 of the Complaint, but admits that for a course from one department to be considered as satisfying a required course in another department, the Chair of the other department must evaluate and approve the course content.

134.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 134 of the Complaint.

135.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 135 of the Complaint.

136.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 136 of the Complaint.

137.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 137 of the Complaint.

138.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 138 of the Complaint.

139.    Admits that because of Covid-19 safety measures, Morrell's interactions with Moralez throughout 2020 and 2021 had been on zoom calls and email chains but denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 139 of the Complaint.

140.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 140 of the Complaint.

141.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 141 of the Complaint.

142.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 142 of the Complaint.

143.    Denies the allegations contained in paragraph 143 of the Complaint.

144.    Denies the allegations contained in paragraph 144 of the Complaint.

145.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 145 of the Complaint.

146.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 146 of the Complaint.

147.    Admits the allegations contained in paragraph 147 of the Complaint.

148.    Denies the allegations contained in paragraph 148 of the Complaint but admits that Moralez suggested texting instead of numerous emails.

149.    Denies the allegations contained in paragraph 149 of the Complaint.

150.    Denies the allegations contained in paragraph 150 of the Complaint.

151.    Denies the allegations contained in paragraph 151 of the Complaint.

152.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 152 of the Complaint.

153.    Denies the allegations contained in paragraph 153 of the Complaint but states that Moralez said he would clean to which Morrell responded: "We are rapidly defeating the purpose of this if you start cleaning".

154.    Denies the allegations contained in paragraph 154 of the Complaint.

155.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 155 of the Complaint.

156.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 156 of the Complaint.

157.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 157 of the Complaint.

158.    Admits the allegations contained in paragraph 158 of the Complaint, except states that Morrell asked if Moralez drank before offering to bring beer and states that Morrell brought 8 beers to Moralez's residence.

159.    Admits that Moralez mainly stood while in the kitchen but denies knowledge or information sufficient to form a belief as to the remaining allegations contained in paragraph 159 of the Complaint.

160.    Denies the allegations contained in paragraph 160 of the Complaint.

161.    Denies the allegations contained in paragraph 161 of the Complaint.

162.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 162 of the Complaint.

163.    Denies the allegations contained in paragraph 163 of the Complaint.

164.    Denies the allegations contained in paragraph 164 of the Complaint as to Moralez and denies knowledge or information sufficient to form a belief as to the remaining allegations.

165.    Denies the allegations contained in paragraph 165 of the Complaint.

166.    Denies the allegations contained in paragraph 166 of the Complaint.

167.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 167 of the Complaint as to Morrell's feelings and specifically denies observing any dizziness or unsteadiness in Morrell.

168.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 168 of the Complaint.

169.    Admits that Moralez showed Morrell how to use the water cooler, but not because Morrell was incapacitated, and denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph the allegations contained in paragraph 169 of the Complaint.

170.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 170 of the Complaint.

171.    Denies the allegations contained in paragraph 171 of the Complaint.

172.    Denies the allegations contained in paragraph 172 of the Complaint.

173.    Denies the allegations contained in paragraph 173 of the Complaint.

174.    Denies the allegations contained in paragraph 174 of the Complaint.

175.    Denies the allegations contained in paragraph 175 of the Complaint.

176.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 176 of the Complaint as to what Morrell experienced and specifically denies any wrongdoing by Moralez.

177.    Denies the allegations contained in paragraph 177 of the Complaint.

178.    Denies the allegations contained in paragraph 178 of the Complaint.

179.    Denies the allegations contained in paragraph 179 of the Complaint.

180.    Denies the allegations contained in paragraph 180 of the Complaint.

181.    Denies the allegations contained in paragraph 181 of the Complaint regarding Morrell and refers to the statute referenced therein for the contents thereof.

182.    Denies the allegations contained in paragraph 182 of the Complaint.

183.    Denies the allegations contained in paragraph 183 of the Complaint.

184.    Denies the allegations contained in paragraph 184 of the Complaint.

185.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 185 of the Complaint.

186.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 186 of the Complaint.

187.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 187 of the Complaint.

188.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 188 of the Complaint.

189.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 189 of the Complaint.

190.    Denies the allegations contained in paragraph 190 of the Complaint.

191.    Denies the allegations contained in paragraph 191 of the Complaint.

192.    Denies the allegations contained in paragraph 192 of the Complaint.

193.    Denies the allegations contained in paragraph 193 of the Complaint as to Moralez and denies knowledge or information sufficient to form a belief as to the remaining allegations.

194.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 194 of the Complaint.

195.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 195 of the Complaint.

196.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 196 of the Complaint.

197.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 197 of the Complaint.

198.    Denies the allegations contained in paragraph 198 of the Complaint.

199.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 199 of the Complaint.

200.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 200 of the Complaint.

201.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 201 of the Complaint.

202.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 202 of the Complaint and states that on April 15, 2022 Moralez received a no-contact order from SLU and that Moralez taught remotely beginning on April 20, 2022 before being placed on administrative leave.

203.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 203 of the Complaint.

204.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 204 of the Complaint.

205.    Denies the allegations contained in paragraph 205 of the Complaint.

206.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 206 of the Complaint.

207.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 207 of the Complaint.

208.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 208 of the Complaint.

209.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 209 of the Complaint.

210.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 210 of the Complaint.

211.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 211 of the Complaint.

212.    Denies the allegations contained in paragraph 212 of the Complaint but states that on April 20, 2022 Moralez was required to teach his class remotely.

213.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 213 of the Complaint.

214.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 214 of the Complaint.

215.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 215 of the Complaint.

216.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 216 of the Complaint.

217.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 217 of the Complaint.

218.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 218 of the Complaint.

219.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 219 of the Complaint.

220.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 220 of the Complaint.

221.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 221 of the Complaint.

222.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 222 of the Complaint.

223.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 223 of the Complaint.

224.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 224 of the Complaint.

225.    Denies the allegations contained in paragraph 225 of the Complaint.

226.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 226 of the Complaint.

227.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 227 of the Complaint.

228.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 228 of the Complaint and admits that SLU placed Defendant on paid administrative leave.

229.    Denies the allegations contained in paragraph 229 of the Complaint.

230.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 230 of the Complaint.

20

231.    Denies the allegations contained in paragraph 231 of the Complaint.

232.    Denies the allegations contained in paragraph 232 of the Complaint.

233.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 233 of the Complaint.

234.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 234 of the Complaint.

235.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 235 of the Complaint.

236.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 236 of the Complaint but admits that Moralez has been paid his full salary while on forced leave.

237.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 237 of the Complaint but states that Moralez is not currently scheduled to teach any classes in the fall.

238.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 238 of the Complaint.

239.    Denies the allegations contained in paragraph 239 of the Complaint.

240.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 240 of the Complaint.

241.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 241 of the Complaint.

242.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 242 of the Complaint.

243.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 243 of the Complaint.

244.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 244 of the Complaint.

245.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 245 of the Complaint.

## FIRST CAUSE OF ACTION
### (Discrimination In Violation of Title VII)
#### *Against Defendant St. Lawrence*

246.    Defendant hereby repeats, reiterates and re-alleges each and every response as contained in each of the preceding paragraphs as if fully set forth herein.

247.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 247 of the Complaint.

248.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 248 of the Complaint.

249.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 249 of the Complaint.

250.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 250 of the Complaint.

## SECOND CAUSE OF ACTION
### (Retaliation In Violation of Title VII)
#### *Against Defendant St. Lawrence*

251.    Defendant hereby repeats, reiterates and re-alleges each and every response as contained in each of the preceding paragraphs as if fully set forth herein.

252.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 252 of the Complaint.

253.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 253 of the Complaint.

## THIRD CAUSE OF ACTION
### (Gender Discrimination, including Hostile Work Environment in Violation of the NYSHRL)
### *Against All Defendants*

254.    Defendant hereby repeats, reiterates and re-alleges each and every response as contained in each of the preceding paragraphs as if fully set forth herein.

255.    Denies the allegations contained in paragraph 255 of the Complaint.

256.    Denies the allegations contained in paragraph 256 of the Complaint.

257.    Denies the allegations contained in paragraph 257 of the Complaint.

258.    Denies the allegations contained in paragraph 258 of the Complaint.

259.    Denies the allegations contained in paragraph 259 of the Complaint.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
### *Against All Defendants*

260.    Defendant hereby repeats, reiterates and re-alleges each and every response as contained in each of the preceding paragraphs as if fully set forth herein.

261.    Denies the allegations contained in paragraph 261 of the Complaint.

262.    Denies the allegations contained in paragraph 262 of the Complaint.

263.    Denies the allegations contained in paragraph 263 of the Complaint.

## FIFTH CAUSE OF ACTION
### (Aiding and Abetting in Violation of the NYSHRL)
### *Against Defendant Ernesto Moralez*

264.    Defendant hereby repeats, reiterates and re-alleges each and every response as contained in each of the preceding paragraphs as if fully set forth herein.

265.    Denies the allegations contained in paragraph 265 of the Complaint.

266.    Denies the allegations contained in paragraph 266 of the Complaint.

267.    Denies the allegations contained in paragraph 267 of the Complaint.

268.    Denies the allegations contained in paragraph 268 of the Complaint.

## SIXTH CAUSE OF ACTION
### (Discrimination in Violation of Title IX of the Education
### Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.*)
### *Against Defendant St. Lawrence*

269.    Defendant hereby repeats, reiterates and re-alleges each and every response as contained in each of the preceding paragraphs as if fully set forth herein.

270.    Admits.

271.    Denies the allegations contained in paragraph 271 of the Complaint.

272.    Denies the allegations contained in paragraph 272 of the Complaint.

273.    Denies the allegations contained in paragraph 273 of the Complaint.

274.    Denies the allegations contained in paragraph 274 of the Complaint.

275.    Denies the allegations contained in paragraph 275 of the Complaint.

## SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of Title IX of the Education
### Amendments Act of 1972, 20 U.S.C. § 1681, *et seq.*)
### *Against Defendant St. Lawrence*

276.    Defendant hereby repeats, reiterates, and re-alleges each and every response in all of the preceding paragraphs as if fully set forth herein.

277.    Denies the allegations contained in paragraph 277 of the Complaint.

278.    Denies the allegations contained in paragraph 278 of the Complaint.

279.    Denies the allegations contained in paragraph 279 of the Complaint.

280.    Denies the allegations contained in paragraph 280 of the Complaint.

## EIGHTH CAUSE OF ACTION
### (Negligence, Negligent Supervision and Negligent Retention)
### *Against Defendant St. Lawrence*

281.    Defendant hereby repeats, reiterates, and re-alleges each and every response in all of the preceding paragraphs as if fully set forth herein.

282.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph 282 of the Complaint.

283.    Denies the allegations contained in paragraph 283 of the Complaint.

284.    Denies the allegations contained in paragraph 284 of the Complaint.

285.    Denies the allegations contained in paragraph 285 of the Complaint.

286.    Denies the allegations contained in paragraph 286 of the Complaint.

287.    Denies the allegations contained in paragraph 287 of the Complaint.

288.    Denies the allegations contained in paragraph 288 of the Complaint.

## NINTH CAUSE OF ACTION
### (Sexual Assault)
### *Against Defendant Ernesto Moralez*

289.    Defendant hereby repeats, reiterates, and re-alleges each and every response in all of the preceding paragraphs as if fully set forth herein.

290.    Denies the allegations contained in paragraph 290 of the Complaint.

291.    Denies the allegations contained in paragraph 291 of the Complaint.

292.    Denies the allegations contained in paragraph 292 of the Complaint.

## TENTH CAUSE OF ACTION
### (Sexual Battery)
### *Against Defendant Ernesto Moralez*

293.    Defendant hereby repeats, reiterates, and re-alleges each and every response in all of the preceding paragraphs as if fully set forth herein.

294.    Denies the allegations contained in paragraph 294 of the Complaint.

295.    Denies the allegations contained in paragraph 295 of the Complaint.

296.    Denies the allegations contained in paragraph 296 of the Complaint.

**WHEREFORE**, Defendant demands judgment dismissing all claims against him in this matter, plus counsel fees, costs, and such other relief as the court may deem appropriate.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

297.    The Complaint fails to state a claim upon which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

298.    Morrell's claims are barred, in whole or in part, because Plaintiff has not suffered any injury or damage as the result of any act, conduct or omission by Defendant Moralez.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

299.    Morrell's claims are barred, by the applicable Statute of Limitations.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

300.    If any liability is found against the Defendant, then said liability shall be apportioned among Morrell and the Defendant consistent with the degree of culpability that each will be found to have in relation to the entire measure of culpability.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

301.    Morrell's claims are barred in whole or in part by the doctrine of laches, estoppel and/or waiver.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

302.    Defendant has not breached any duty to Morrell.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

303.    Plaintiff's damages, if any, resulted from the actions of parties over whom Defendant Moralez has no control.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

304.    The causes of action alleged in the Complaint are barred by the entire controversy doctrine, res judicata and/or collateral estoppel.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

305.    The Plaintiff is not entitled to recover punitive or other damages and has failed to comply with the requirements to establish a claim under the Punitive Damages Act and is barred from such recovery.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

306.    Morrell's Complaint is frivolous entitling Defendant Moralez to attorneys' fees.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

307.    Plaintiff's damages, if any, were not proximately related to any alleged conduct of Defendant Moralez.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

308.    Defendant Moralez reserves all of his rights to add further affirmative defenses during the course of this proceeding upon discovery of additional facts or other good causes.

## FACTS COMMON TO ALL COUNTERCLAIMS

1.     Defendant Ernesto Moralez by and through his attorneys, NESENOFF &
MILTENBERG, LLP alleges the following counterclaims against Plaintiff Erica Morrell's
("Morrell")

## Nature of the Counterclaims

2.     Moralez's counterclaims arise out of Morrell's actions to defame, humiliate, harass,
and punish Moralez, a fellow professor at Defendant St. Lawrence University ("SLU") after
Moralez and Erica Morrell engaged in a consensual sexual encounter.

3.     Morrell and two other SLU professors conspired together to conduct a campaign of
defamation and harassment to ruin Moralez's personal and professional reputation in retaliation
for perceived slights Moralez.

4.     Erica Morrell endeavored to use both the criminal justice system and SLU's Title
IX office to have Moralez fired or arrested for fear of the repercussions that would have resulted
from Morrell's, a married woman, consensual sexual encounter with Moralez. Morrell even
collaborated with a disturbed individual who had been harassing Moralez online for years to
defame and torment Moralez.

5.     Moralez has been greatly damaged by Morrell's actions, including physical,
psychological, emotional and reputational damages. He has also suffered by being prohibited from
teaching and will continue to suffer economic injuries, the loss of career opportunities, and loss of
future potential earnings as a result of Morrell's false allegations and defamatory statements. The
threat of further spread of false allegations that Moralez is a perpetrator of sexual assault is ever-
present. Moralez therefore brings these counterclaims to obtain relief from Plaintiff based on
various state law claims.

**Moralez's Interactions with Erica Morrell**

6.      Erica Morrell emailed Moralez on April 7, 2022, inviting him for coffee or a meal to belatedly welcome Moralez to the SLU campus. Moralez and Morrell (collectively the "Parties") exchanged text messages regarding where and when to meet.

7.      Morrell suggested eating at a bed and breakfast near SLU where Morrell stays when in Canton, New York. Moralez offered hosting at his residence stating: "I'm good with the takeout idea. "**I could also host if you're comfortable with that**." (emphasis supplied). Ms. Morrell responded stating: "that's fine with me if easiest" and "thanks for being flexible!"  Ms. Morrell advised Moralez that she would not be done on campus until after 8:00 pm.

8.      The Parties agreed to meet for dinner on April 12, 2022, at Moralez's residence.

9.      Morrell asked if Moralez drinks alcohol and offered to bring beer to his residence. On April 12, 2022 at approximately 8:00PM Morrell arrived at Moralez's residence with 8 beers.

10.      The Parties ate dinner, drank, and talked for a few hours.

11.      The Parties spoke about their experiences at SLU and specifically discussed SLU Assistant Professor of Sociology Alanna Gillis. The Parties mutually complained about Dr. Gillis and referred to her as arrogant.

12.      The Parties also discussed their personal lives. Morrell opened up to Moralez about her marital problems. Morrell told Moralez that she was in a loveless marriage and that her husband was an addict. Morrell further told Moralez that she and her husband were separated and that she had already dated someone else, but that it had not worked out.

13.      At no point did Morrell seem incapacitated or even intoxicated. After dinner, the Parties consensually kissed while in the kitchen. Moralez invited Morrell to spend the night and Morrell accepted. Moralez then cleaned up the food and let his dog out. The Parties then went

upstairs to Moralez's bedroom and engaged in consensual sex. Morrell would later tell SLU's Title IX investigators that she purposely used the bathroom to urinate after the sexual encounter because she is prone to UTIs after intercourse[1].

14.      After the encounter, Moralez invited Morrell to stay the night. Morrell responded that she would lay with Moralez but may not stay the entire night.

15.      Morrell left Moralez's residence at approximately 2:00AM. On April 13, 2022 at approximately 7:30AM Moralez went downstairs and found a note from Morrell written on a paper towel stating: "My shirt is somewhere 😊 (with a hand-drawn smiley face) Thanks for letting me welcome you[2]".

16.      At approximately 9:30AM on April 13, 2022 Morrell texted Moralez asking if she could "come over" to his residence. Moralez replied that he was not home but invited Morrell to meet him on campus. Morrell met Moralez in his office on campus at approximately 10:30 am. After a short tour of Moralez's office, Moralez offered to walk Morrell back to her room at the bed and breakfast and Morrell agreed.

17.      Moralez walked Morrell back to the bed and breakfast and Morrell invited Moralez to come to her room for another sexual encounter. Moralez declined Morrell's offer. During the walk Moralez mentioned to Morrell that he would be teaching an evening class. Morrell offered to observe the class and give Moralez feedback and Moralez accepted Morrell's offer.

18.      Upon information and belief that same day April 13, 2022, Morrell went to Potsdam, New York, to get a SANE Exam. Upon information and belief, Morrell declined a

---

[1] Morrell's recollection of this detail completely contradicts her subsequently manufactured narrative that she was drugged and raped.
[2] A reference to Morrell's first email on April 7, 2022, about wanting to welcome Moralez to campus belatedly.

toxicology screening and directed the nurse administering the SANE Exam to dispose of the toxicology sample.

19.    On April 13, 2022, when upon information and belief Morrell was undergoing the SANE exam,  Morrell sent Moralez the following text messages:

> 6:17 pm: I'm literally stuck in Potsdam but trying to make it
> 6:20 pm: I got a flat running errands! I'm pretty sure this has never happened to me
> 6:35 pm: I'm waiting (*for AAA to repair her flat tire*) what if I'm 30 late (*to Moralez's class*) still
> worth it or reschedule?
> 7:39 pm: I'm still here so sorry. AAA took a while getting to me I haven't left

20.    Morrell arrived at Moralez's class at approximately 8:00PM and sat near the door using her laptop. The students in Moralez's class were particularly noisy that evening due to the topic of social media and mental health. After the class, another faculty member asked Moralez to keep his classroom door closed in the future due to the noise.

21.    Morrell offered to give Moralez and his dog[3] a ride home and Moralez accepted. During the drive, Moralez mentioned that the interaction with the other faculty member was strange, Ms. Morrell responded in a jealous manner stating that she assumed that Moralez and the faculty member "were fucking."  Morrell said she assumed Moralez was sleeping with a lot of faculty members. Moralez was disturbed by Morrell's comments.

22.    Morrell asked to go inside Moralez's residence, but Moralez responded that he was tired and just wanted to get to sleep. Morrell asked if she could pet Moralez's dog before she left and Moralez obliged. After a few minutes of petting Moralez's dog Morrell left.

**Morrell Begins a Campaign to Defame and Harass Moralez**

23.    On or about April 15, 2022, Morrell filed a Title IX complaint alleging that her sexual encounter with Moralez was non-consensual. Morrell initially alleged that she was

---

[3] Moralez often takes his dog to work and his dog sits in the classroom while Moralez teaches.

conscious and that her words and actions indicated consent but that she was having a trauma reaction. Morrell later claimed that she was drugged and incapacitated. Morrell has zero credibility as her narratives contained material inconsistencies and changed substantially over time.

24.     Morrell's narrative is contradictory and illogical, by way of example and not limitation, Ms. Morrell claimed during the Title IX investigation that she feared Moralez. Yet, Morrell admitted that the morning after the alleged rape, she texted Moralez asking to come to his home alone Morrell met Moralez in his office and they walked to her bed and breakfast. Morrell even admitted to the Title IX Investigators that she invited Moralez to her room the next day and told him that they would be alone. Later that evening, Morrell observed Moralez's class and drove him and his dog home.

25.     Morrell left Moralez a flirtatious handwritten note with a smiley face after the alleged rape.

26.     Moreover, while Morrell underwent a SANE exam, she directed the nurse to dispose of the toxicology sample and cut the exam short to observe Moralez's class.

27.     Morrell's actions on April 13, 2022 were completely inconsistent with her narrative of having been "brutally raped."

28.     On April 24, 2022, Plaintiff received a phone call from his colleague SLU Assistant Professor of Psychology Brittany Hollis, to advise him that she had been contacted by a colleague to "alert" her that Moralez had sexually assaulted

29.     Morrell and to be cautious because Moralez had not yet been arrested. According to Ms. Smith, several women had been contacted and given a detailed description of the alleged assault, including that Moralez allegedly used force and that Morrell had turned in torn clothing to local police and completed a SANE exam at a local hospital.

30.     Upon information and belief Morrell contacted Alanna Gillis, SLU Assistant Professor of Sociology and Reslie Cortes formerly of SLU and now at James Madison University, and falsely claimed that Moralez raped Morrell.

31.     Morrell, Dr. Gillis, and Ms. Cortes conspired together to make a phone chain (the "Phone Chain"), wherein they called certain female faculty members including Ms. Hollis to defame Moralez by stating, *inter alia*, that Moralez raped Morrell and to use caution because Moralez had not been arrested yet. The callers also encouraged staff and faculty members to continue the Phone Chain to spread the word about Moralez.

32.     Upon information and belief, the Phone Chain continued for several more weeks.

33.     Upon information and belief, Dr. Gillis was motivated to defame and otherwise harm Moralez because Morrell disclosed to Dr. Gillis some of the complaints that Moralez made about Dr. Gillis during Morrell's dinner with Moralez on April 12, 2022.

34.     On or about April 25, 2022, Moralez's colleague Dr. Jessica Sierk, SLU Associate Professor of Education had dinner with Dr. Gillis.

35.     Prior to the dinner Dr. Gillis texted Dr. Sierk that there had been a sexual assault in their community.

36.     During the dinner on or about April 25, 2022, Dr. Gillis told Dr. Sierk that Morrell had informed her that Moralez had violently raped Morrell.

37.     The initiators and recipients of the Phone Chain continued to spread the defamatory contents of the Phone Chain on campus by word of mouth for several more weeks at minimum. The ripple effect from the spread of the Phone Chain is immeasurable.

38.     Over the following weeks Moralez was contacted by many friends and colleagues who heard the same rumors that Moralez violently assaulted a fellow professor.

39.    The Phone Chain was designed as a character assassination of Moralez, meant to destroy his reputation on SLU's campus and beyond.

40.    Dr. Gillis advised the Title IX investigators that Morrell was upset and concerned that her encounter with Moralez could destroy her career at SLU if Moralez weren't "found guilty, fired, and arrested."

41.    Upon information and belief, Ms. Cortes was motivated to defame and otherwise harm Moralez as the two had kissed once and Ms. Cortes asked Moralez to be in a romantic relationship with Ms. Cortes and Moralez declined.

42.    Moralez emailed Kimberly Flint-Hamilton, SLU Interim Title IX Coordinator, to advise her of the defamatory phone calls and to ask if SLU could intervene to stop the calls from continuing. Dr. Flint-Hamilton told Moralez by phone, that nothing could be done about the Phone Chain.

43.    Moralez also alerted SLU's director of human resources about the Phone Chain and was similarly told that they could not stop the calls.

44.    Moralez advised the outside Title IX investigators hired by SLU Julia Green and Ben Murdick (collectively the "Investigators[4]") about the Phone Chain. The Investigators responded that both SLU's human resources and Title IX office should have intervened to stop the calls.

45.    To date, Moralez is unaware of any actions being taken to prevent the Phone Chain from spreading.

46.    In approximately the end of April 2022, Morrell posted a photo of herself on Facebook by a door with a sign that read "Chief of Police" stating: "Trying to contain my

---

[4] Prior to Moralez's meeting with the Investigators, Ms. Flint-Hamilton advised Moralez that he may not have an attorney present. The next day Ms. Flint-Hamilton emailed Moralez that he can in fact have an attorney present.

excitement. Pressing 1st and 2nd degree rape charges" with a flexed arm emoji. She also posted: "a colleague raped me anally and vaginally at work last week." Due to Morrell's actions and statements prior and subsequent to these false and defamatory posts, it was apparent to anyone familiar with the matter that Ms. Morrell was referring to Moralez in the posts.

**Online Harassment of Moralez**

47.    Beginning in 2017 Moralez was contacted via direct messages on Twitter from someone claiming to have known Moralez from the early 2000s (the "Harasser"), who said they wanted to get back into contact and thanked Moralez for being supportive and helpful. Moralez thanked them for the message and did not engage them any further. The Harasser continued to send Moralez messages stating that they were lonely, very unhappy, and did not have much to live for. Moralez responded that they should seek help but that he was not comfortable with them messaging him and asked them to stop. The Harasser continued to stalk Moralez and message him from different accounts and using different aliases. Each time Moralez blocked an account, he would receive messages from new accounts. This pattern continued for years.

48.    At one point, Moralez was contacted via Twitter by an individual claiming to be a professor at New Mexico State University (where Moralez was teaching at the time), making sexual harassment allegations against him. When Moralez emailed the professor, she denied sending the messages and told him the account was fake.

49.    On or about April 2021 Moralez's colleague at SLU informed him that a Snap Chat account using Moralez's face and name was used to direct message the colleague and had asked them personal questions. Moralez had not sent the messages and upon information and belief the messages were sent by the Harasser.

50.    On or about April 23, 2021, SLU congratulated Moralez on Twitter for receiving a teaching award. The Harasser left comments on SLU's tweet linking to tweets accusing Moralez of sexual harassment from 2005[5]. There were similar posts on Facebook.

51.    At various times in 2021 Moralez contacted the SLU Office of Safety and Security, the Canton Police Department, the New Mexico Police Department New Mexico State University, and eventually the FBI about the harassment.

52.    On or about May 3, 2021, Moralez received 16 messages from "Amethyst Sands," which detailed some of the misconduct committed by the Harasser, including impersonating a New Mexico State University professor and using multiple social media accounts and names to harass Moralez.

53.    The Harasser also made Twitter accounts using Moralez's name and likeness, and these accounts have been used to contact other accounts and to post comments.

54.    The SLU Office of Safety and Security received an email on November 18, 2021, from a Gmail account from someone impersonating one of Moralez's students accusing him of sexual harassment. SLU contacted the student, but the student denied sending any such email and further denied that the Gmail address used in the subject email belonged to her[6].

55.    The following day, on November 19, 2021, Moralez received another email, from "Amethyst Sands", apologizing for contacting Moralez's friends and writing that they [the Harasser "haven't been ok for a while." They admit to impersonating people to get his attention and claim this time they did not contact Moralez to discuss "Hannah" [Gurritez].

---

[5] The tweets are from the account of a "Hannah Gurritez", which upon information and belief is a misspelling of Gutierrez, a common Spanish last name.
[6] This was just the latest example of the Harasser's clear pattern of impersonating others and/or creating false identities in order to make false accusations against Moralez.

56.     Moralez had previously confided in Ms. Cortes about the Harasser. After Morrell defamed Moralez to SLU faculty, Ms. Cortes shared with Morrell and others about the online harassment Moralez was experiencing[7]. Ms. Morrell, Ms. Cortes, and Dr. Gillis, maliciously conspired together to contact the Harasser and asked her to share things about Moralez including the fabricated story[8] that Moralez sexually harassed students at a high school he worked at in 2005 in New Mexico.

57.     On May 19th and 20th, 2022 a new Twitter account using the name "Amethyst" (with a screenshot of a photo from the original "Amethyst Sands" Twitter account) and the fake Twitter accounts with Moralez's name and likeness were used upon information and belief by the Harasser to reach out to Moralez's friend from California and the two daughters of a friend of Moralez's from New Mexico, Emma and Mia.

58.     On May 20, 2022, within 24 hours of the Harasser's activity, Morrell maliciously and disturbingly sent Facebook messages to at least two of Moralez's friend's daughters stating that Moralez was "currently under criminal and title ix investigation for rape and [that she] was his most recent victim." Morrell continued: "I wanted to warn you and also encourage you to talk with me…" Copies of Morrell's messages are annexed hereto as Exhibit A.

59.     Morrell's messages defame Moralez by not only falsely claiming that he raped Morrell but also claiming that he had other "victims."  Upon information and belief Morrell also intentionally chose recipients of her defamatory communications to cause the maximum amount of humiliation and devastation to Moralez.

---

[7] Upon information and belief Ms. Cortes assisted Ms. Morrell in her campaign of defamation and harassment against Moralez in retaliation for Moralez's refusal to enter into a romantic relationship with her.
[8] There is no record of any allegations being made against Moralez stemming from his employment the high school in 2005 or at any time thereafter.

60.     On November 17, 2022, Morrell emailed two SLU faculty members who upon information and belief gave favorable interviews to the Title IX investigators regarding Moralez, criticizing them and threatening them Morrell also sent them an email from Moralez's Harasser accusing Moralez of sexual assault.

61.     In December 2022, a Tweet was posted to the St. Lawrence University Twitter page from an account with Moralez's name and likeness confessing to raping Erica Morrell. Dr. Flint-Hamilton told Moralez that the tweet had been investigated and that SLU concluded that Moralez was not responsible for posting the tweet, nor did the account belong to Moralez.

62.      Morrell filed a false report of rape with SLU and the police department. Morrell colluded and conspired with Dr. Gillis, Ms. Cortes, and the Harasser to maliciously defame, harass and retaliate against Moralez by spreading by phone and online the false narrative that Moralez raped Morrell and others. Morrell and her co-conspirators sought to deprive Moralez of the benefit of his contract with SLU, destroy his reputation, and humiliate him in the eyes of his friends, family, and colleagues.

## AS AND FOR A FIRST COUNTERCLAIM
### Defamation (Social Media)

63.     Defendant Moralez repeats and realleges each and every allegation set forth above as though fully set forth herein.

64.     Morrell made false and defamatory statements about Moralez to his colleagues at SLU and to his friend's daughters.

65.     Morrell's statements were made with actual malice and reckless disregard for the truth.

66.     Morrell made non-privileged defamatory false statements that were culpably published and that were damaging.

38

67.    Morrell's statements were intended to, and did, expose Moralez to public contempt, aversion, disgrace, and induce an evil opinion in the minds of right-thinking persons.

68.    The specific statements accusing Moralez of rape are factual: the language used and the context in which the language appeared made clear that Morrell was factually accusing Moralez of rape.

69.    Morrell falsely accused Moralez of rape, defaming his name and reputation by messaging Moralez's friend's daughters on Facebook and stating that Morrell was Moralez's most recent rape victim.

70.    Publication of these false and defamatory statements is actionable per se as they concerned a crime of moral turpitude; namely, sexual assault.

71.    Publication of these false and defamatory statements is also actionable because they have resulted in special harm, in the form of economic losses, including but not limited to Moralez being placed on administrative leave and future career promotions and aspirations.

72.    The aforesaid statements were defamatory because they imputed conduct which injuriously affected Moralez's reputation and/or degraded him in society and/or brought him into public contempt while causing emotional and psychological damages.

73.    Based on the foregoing, Morrell is liable to Moralez for defamation.

74.    As a direct and proximate result of the above conduct, Moralez sustained damages, including, without limitation, emotional distress, damage to reputation, loss of career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

75.    As a result of the foregoing, Moralez is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A SECOND COUNTERCLAIM
### Defamation (Phone Chain)

76.     Defendant Moralez repeats and realleges each and every allegation set forth above as though fully set forth herein.

77.     Morrell made false and defamatory statements about Moralez to his colleagues at SLU and to his friend's daughters.

78.     Morrell's statements were made with actual malice and reckless disregard for the truth.

79.     Morrell made non-privileged defamatory false statements that were culpably published and that were damaging.

80.     Morrell's statements were intended to, and did, expose Moralez to public contempt, aversion, disgrace, and induce an evil opinion in the minds of right-thinking persons.

81.     The specific statements accusing Moralez of rape are factual: the language used and the context in which the language appeared made clear that Morrell was factually accusing Moralez of rape.

82.     Morrell falsely accused Moralez of rape, defaming his name and reputation by initiating and perpetuating the Phone Chain falsely advising Moralez's colleagues that he raped Ms. Morrell.

83.     Publication of these false and defamatory statements is actionable per se as they concerned a crime of moral turpitude; namely, sexual assault.

84.     Publication of these false and defamatory statements is also actionable because they have resulted in special harm, in the form of economic losses, including but not limited to Moralez being placed on administrative leave and future career promotions and aspirations.

85.     The aforesaid statements were defamatory because they imputed conduct which injuriously affected Moralez's reputation and/or degraded him in society and/or brought him into public contempt while causing emotional and psychological damages.

86.     Based on the foregoing, Morrell is liable to Moralez for defamation.

87.     As a direct and proximate result of the above conduct, Moralez sustained damages, including, without limitation, emotional distress, damage to reputation, loss of career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

88.     As a result of the foregoing, Moralez is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

### AS AND FOR A THIRD COUNTERCLAIM
#### Intentional Infliction of Emotional Distress

89.     Moralez repeats and realleges each and every allegation set forth above as though fully set forth herein.

90.     Morrell intentionally inflicted severe emotional distress upon Moralez when she knowingly and willfully pursued a false complaint of sexual assault against Moralez.

91.      Morrell intentionally inflicted severe emotional distress upon Moralez when she spread the false and heinous claims through the Phone Chain and Facebook messages to Moralez's friend's daughters that Moralez raped her and others, knowing such a serious charge could result in Moralez being arrested, being terminated from SLU, in addition to suffering severe emotional damage.

92.     Morrell intentionally inflicted severe emotional distress upon Moralez when she contacted the Harasser and utilized the Harasser to torment Moralez further and spread false statements that Moralez perpetrated sexual assault.

93.     Morrell was substantially certain such distress would result from her conduct, as Morrell expressed to Dr. Gillis that due to Morrell's concerns about her career after her consensual sexual encounter with Moralez, Morrell wanted Moralez found guilty, fired, and arrested.

94.     Morrell was certain such distress would result from this conduct as Ms. Cortes shared with Ms. Morrell how disturbed Moralez was from the Harasser's conduct.

95.     Morrell was certain such distress would result from this conduct as Ms. Morrell intentionally sought to spread her vile and vicious falsehoods to persons calculated to cause maximum humiliation to Moralez, his friend's young daughters.

96.     Morrell's conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community.

97.     Morrell's actions directly caused severe emotional distress to Moralez, including but not limited to a deterioration in Moralez's mental health, as Moralez has been placed on administrative leave pending a determination in the Title IX proceeding, has sustained irreparable damage to his name and reputation, ostracism from his peers, and severe emotional damage.

98.     The distress suffered by Moralez as a result of Morrell's actions was so severe that no reasonable person should be expected to endure it.

99.    Based on the foregoing, Morrell is liable to Moralez for intentional infliction of emotional distress.

100.    As a direct and proximate result of the above conduct, Moralez sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

101.    As a result of the foregoing, Moralez is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A FOURTH COUNTERCLAIM
### Civil Conspiracy

102.    Moralez repeats and realleges each and every allegation hereinabove as though fully set forth herein.

103.    Morrell, Dr. Gillis, and Ms. Cortes acted in concert with the common purpose of defaming and injure Moralez emotionally, reputationally, and economically by engaging in the acts outlined above, including but not limited to the false reporting to SLU, the Canton police department, Moralez's colleagues at SLU and Moralez's friend's daughter that Moralez had brutally raped her and others.

104.    It was foreseeable that the actions undertaken by Morrell, Dr. Gillis, and Ms. Cortes would result in Moralez being injured and were undertaken by Morrell, Dr. Gillis, and Ms. Cortes for that express purpose.

105.    Moralez has suffered as a direct and proximate result of the above conduct, tremendous damages, including, without limitation, emotional distress, damage to reputation, loss

of educational and career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages actions.

106.    Moralez suffered and incurred Special Damages, which were foreseeable and were exacerbated and magnified as a result of Morrell's conspiracy to defame.

107.    Moralez's injuries were exacerbated and magnified because the defamatory statements were disseminated through electronic communication and published online. As a result of the foregoing, Moralez is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## AS AND FOR A FIFTH COUNTERCLAIM
### Tortious Interference with Contract

108.    Moralez repeats and realleges each and every allegation set forth above as though fully set forth herein.

109.    Moralez entered a valid contract with SLU as part of his employment.

110.    Morrell was indisputably aware of the contract between Moralez and SLU, as she herself was provided with SLU's Employment Handbook.

111.    Morrell was aware that in entering into an agreement with SLU, Moralez was conferred contractual rights against SLU.

112.    Morrell intentionally, maliciously, and without justification induced SLU not to perform the contract, depriving Moralez of a fair and speedy grievance process.

113.    As a direct and proximate result, Moralez was placed on administrative leave and suspended from teaching.

44

114.    Morrell intentionally, maliciously, and without justification, induced SLU to cease performance of its contract with Moralez.

115.    Morrell's action resulted in actual damage to Moralez; namely, suspension from teaching.

116.    As a direct and proximate result of the above conduct, Moralez sustained tremendous damages, including, without limitation, emotional distress, damage to reputation, loss of career opportunities, loss of future earning capacity, economic injuries, emotional and psychological damages, and other direct and consequential damages.

117.    As a result of the foregoing, Moralez is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons, Moralez demands judgment against Morrell as follows:

i.        on the first cause of action, a declaration that Erica Morrell defamed Moralez and an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

ii.       on the second cause of action, a declaration that Morrell defamed Moralez and an award of compensatory and punitive damages in an amount to be determined at trial,

including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

iii.        on the third cause of action for intentional infliction of emotional distress, judgment awarding Moralez an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements;

iv.        on the fourth cause of action for civil conspiracy, a judgment awarding Moralez damages including but not limited to special damages; and awarding Moralez such other and further relief as the Court deems just, equitable and proper.

v.        on the fifth cause of action for tortious interference with contract, a judgment awarding Moralez an award of compensatory and punitive damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and career opportunities, and loss of future career prospects, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements

**Dated:**        **New York, New York**
            **March 5, 2025**

                    **Respectfully Submitted,**
                    **NESENOFF & MILTENBERG, LLP**

            By:    *Andrew T. Miltenberg*
                    Andrew T. Miltenberg, Esq.

Stuart Bernstein, Esq.
Helen J. Setton, Esq.
363 Seventh Avenue, Fifth Floor

New York, New York 10001
(212) 736-4500

*Attorneys for Defendant Ernesto Moralez*